**In re Duane Alan MILLS, Kris Heidenreich Mills, Debtors.**

**Duane Alan Mills and Kris Heidenreich Mills, Plaintiffs,**

v.

**United States of America; Department of the Treasury; and the Internal Revenue Service, Defendants.**

**Bankruptcy No. 96–20435.
Adversary No. 98–0076.**

United States Bankruptcy Court,
S.D. West Virginia.

June 23, 1999.

Andrew S. Nason, Charleston, WV, for plaintiffs.

Gary L. Call, U.S. Attorney's Office, Charleston, WV, R. Scott Clarke, Washington, DC, Helen M. Morris, South Charleston, WV, for defendants.

## ORDER GRANTING MOTIONS OF UNITED STATES AND DEBTORS FOR JUDGMENT ON STIPULATED RECORD; AND GRANTING JUDGMENT TO THE DEBTORS AGAINST THE UNITED STATES, ET AL.

RONALD G. PEARSON, Bankruptcy Judge.

This matter comes before the Court upon several motions filed on June 10, 1999. The debtors and the United States have requested this Court to decide this case based upon a stipulation of facts submitted by the parties. The debtors and the United States have additionally submitted memoranda in support of their arguments for judgment on the pleadings. This Court finds that the motions for judgment on the stipulations of fact are proper, as there are no factual disputes in this case, and rules as follows based upon the stipulations and arguments of counsel.

### FACTUAL BACKGROUND

The debtors filed for protection under Chapter 13 of the Bankruptcy Code on May 16, 1996 This adversary proceeding was instituted by the debtors on June 24, 1998 to persuade the Internal Revenue Service (hereinafter I.R.S.) to consider an Offer in Compromise which debtors had submitted pursuant to 26 U.S.C. § 7121 and § 7122 in an attempt to resolve their substantial non-dischargeable tax obligations to the I.R.S. Debtors' tax obligations arise out of operation of a convenient-style grocery business, E–Z Mart Food Stores, which operated at three locations, the last of which was shut down in December, 1993 due to non-profitability. Debtors indicate that no assets remain from operation of that business, but a tax debt of over $100,000.00 remains due from said operations.

Debtors filed this adversary proceeding asking this Court to find that the IRS's policy of refusing to consider Offers in Compromise (hereinafter "compromise")

from bankruptcy debtors a violation of 11 U.S.C. § 525, which prohibits discrimination against those who seek protection under the Bankruptcy Code on the sole basis of their bankruptcy filing. Debtors assert that this Court can use its equitable powers under 11 U.S.C. § 105 to require the IRS to at least consider compromises from bankruptcy debtors using the same criterion as would be used for non-bankruptcy debtors.

The IRS has stated that it is owed an unsecured priority claim of $61,736.34 and a general unsecured claim of $49,860.84 for income and unemployment taxes incurred by the debtors. The IRS states that, under the Bankruptcy Code, debtors must pay the priority tax claims in full over a three to five year Chapter 13 plan, as these taxes are nondischargeable. Additionally, the IRS states that the debtors have no constitutional right to have their offer in compromise considered by the IRS, and that the decision not to consider such compromises from bankruptcy debtors is a discretionary decision which cannot be compelled by courts. The IRS states that the decision not to consider compromises from bankruptcy debtors is based on sound policy reasons, that it is not discriminatory, and is not a violation of § 525.

On July 30, 1998, the IRS filed a Motion to Dismiss this adversary proceeding based upon the above arguments, to which the debtors filed a response on September 17, 1998. This Court entered an Order Denying United States' Motion to Dismiss on November 30, 1998 on the basis that the IRS has not shown that the debtors failed to state a claim for which no relief could be granted under Federal Rule of Civil Procedure 12(b)(6), as made applicable by Bankruptcy Rule 7012. The Court, in the November 30, 1998 Order found that this is a case of first impression in bankruptcy courts, and that the "IRS has simply not shown to this Court's satisfaction that this relief is not available to the debtors under § 525 and § 105 of the Bank-

ruptcy Code." The parties have stipulated to the facts as follows.

### STIPULATIONS

1. Debtors filed Chapter 13 on May 16, 1996.

2. That the IRS has claims against the debtors for income and employment taxes totaling $111,597.18, which is set forth on a proof of claim dated January 22, 1998. The taxes consist of $61,736.34 in unsecured priority claims under § 507(a)(8) and $49,860.84 in general unsecured claims.

3. Debtors filed their first Chapter 13 plan on July 17, 1996 which provided treatment of the IRS's claim "will be paid outside the plan." IRS filed a timely objection to the plan, and hearing on confirmation was continued.

4. Debtors filed an amended plan of January 1, 1997, and provided with respect to the IRS' priority claim that debtors "propose[d] an offer in compromise to pay the IRS $4,800.00 as a lump sum payment to pay this claim in full." The United States Attorney filed an objection to the amended plan.

5. Debtors filed a third amended plan on April 7, 1997, proposing to pay the IRS the sum of $6,500.00 in full satisfaction of its claims. Again, the IRS objected to confirmation.

6. Debtors submitted an Offer in Compromise to the IRS on or about November 6,1997, with a $100.00 deposit, IRS Form 656, and Form 433–A, Collection Information Statement for Individuals.

7. Debtors filed a fourth amended plan on March 13, 1998 proposing to pay the IRS $6,500.00 "as a lump sum payment to pay this claim in full at confirmation." United States objected, stating that it objected to the use of an offer in compromise as a basis for satisfying its priority claim.

8. The IRS did not process debtors' offer in compromise in any manner.

9. Both parties agree that 26 U.S.C. § 7122 is the sole statutory authority which governs the consideration of offers in compromise by the United States Department of the Treasury.

10. Prior to February 12, 1997, the IRS would routinely process offers in compromise of individuals who met the processability criteria without regard to whether the applicants had filed for bankruptcy protection.

11. In February, 1997, the IRS revised its processability criterion on Form 656 which states that "[i]f a taxpayer is in bankruptcy at the time the offer is submitted we will return the offer as non-processable." The IRS' manual has been amended to include this policy.

12. The debtors' offer in compromise may have been processible if they were not in bankruptcy, but the IRS never investigated the documents to make such a determination prior to returning the documents to the debtors.

*See Stipulation of Facts* submitted June 10, 1999.

In addition to the above stipulated facts, the parties included photocopies of the letter from the debtors to the IRS submitting the offer in compromise dated November 6, 1997, along with copies of the Form 656 and Form 433–A, and a copy of the $100.00 deposit. Also included in the stipulated documents is a Memorandum for Regional Chief Compliance Officers from the IRS, National Director, Collection Field Operations, dated February 12, 1997 stating the new processability criterion. The Memorandum states "[i]f a taxpayer is in bankruptcy at the time the offer is submitted we will return the offer as not processable." *See Exhibit 2 to Stipulations of Fact* at 2.

The parties have also included photocopies of applicable provisions in the IRS' manual for consideration of offers in compromise. One document states "DO NOT utilize the verification and documentation guidelines anytime prior to when the offer is determined to be processable," and sets

forth methods of verification of financial information. *See Exhibit 3 to Stipulation of Facts.* Other sections included in the stipulations refer specifically to offers in compromise submitted by bankruptcy debtors. One such section states as follows:

1. We will not consider an offer in compromise submitted by a taxpayer in bankruptcy. When a taxpayer files bankruptcy the Bankruptcy Code and our administrative procedures protect the interest of the government in the same way that the procedures for the investigation of an offer are geared to protecting the government's interest. In addition, investigating an offer could be considered a violation of the stay of collection action provided by the Bankruptcy Code.

2. An offer will not be considered until the termination of the bankruptcy proceeding.

3. If an offer in compromise is submitted while the taxpayer is in bankruptcy, the offer is not processable. Follow Chapter 3, Criteria to Determine Processability.

The Chapter 3, Processability Determination, states with regard to taxpayers who have filed bankruptcy that the IRS "[c]annot consider an offer until the bankruptcy proceeding is terminated." An offer by a taxpayer in bankruptcy is "not processable."

### DEBTORS' ARGUMENTS:

Debtors state that they are not requesting this Court to require to IRS to accept the debtors' offer in compromise, but merely want the Court to require the IRS to *consider* and process their offer in compromise as they would those submitted by non-debtor taxpayers. Debtors state that the IRS' policy change in February, 1997 is governmental discrimination against bankruptcy debtors in violation of 11 U.S.C. § 525(a), and that this Court has the power under 11 U.S.C. § 105 to ensure

that debtors in bankruptcy are treated the same as non-debtors by the IRS in conjunction with offers to compromise tax debts.

Debtors rely upon the portion of § 525 which prohibits discrimination against debtors by governmental acts to "revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant, to condition such a grant, to discriminate with respect to such a grant against, to deny employment to, or terminate the employment of an individual" solely on the basis that such individual has filed bankruptcy. *See Debtors' Memorandum* at 7. Debtors refer to this Court's Order of November 30, 1998 which denied the United States' motion to dismiss wherein the Court noted that the IRS violated its own statutory grant of authority and acted in a manner inconsistent with other provisions of the statute.

Debtors cite *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) in support of an expansive interpretation of the anti-discrimination provisions of § 525. Debtors state that the right to offer an alternative tax treatment is a "license" as contemplated under § 525, in that it would be illegal for taxpayers to submit such an offer in the absence of 26 U.S.C. § 7122. Debtors state that the statute authorizing taxpayers to submit offers of alternative treatment of their tax obligations to the government should be applicable to all taxpayers, regardless of their bankruptcy filing, and that the failure of the IRS to consider offers from bankruptcy debtors is a violation of Congressional intent and therefore discriminatory under § 525. Debtors further cite cases in support of the view that § 525 is a nonexhaustive list of the types of discrimination prohibited, and analogizes this case to student loan, employment and other similar cases wherein courts have found discrimination.

The IRS policy of not considering offers in compromise until discharge in bankruptcy is particularly burdensome to Chapter 13 and Chapter 11 debtors who must complete a plan before being permitted to offer an alternative treatment to their tax obligations. Debtors claim this gives the IRS significantly more power over these taxpayers in negotiating compromises.

Additionally, the debtors refer to the portion of this Court's November 30, 1998 Order which stated that interpretation of statutory and other authority indicates that the decision to accept or reject an offer in compromise is discretionary, but that it appears that the consideration of an offer in compromise may be mandatory. As additional support of this idea, debtors cite *In re Will Rogers Jockey & Polo Club, Inc.,* 111 B.R. 948 (Bkrtcy.N.D.Okl.1990), wherein that court stated that there was no discrimination under § 525 because the debtor's application for approval of a license was actually considered and denied on the merits. Debtors contend that this indicates that the consideration of the application was mandatory, but that a denial based on the merits of the application would not be reviewable. In this case, the IRS did not even review the offer in compromise to see if it was sufficient to proceed to the investigation stage. The offer was simply not considered at all due to the debtors' bankruptcy filing.

In sum, debtors state that the policy implemented by the IRS in February, 1997 is discriminatory in that it establishes a procedure whereby only bankruptcy debtors with ongoing cases will not have their offers in compromise considered. No legislation has been passed by Congress which adopts this policy, and no other types of taxpayers, other than those who have filed bankruptcy, are denied consideration of offers in compromise. Therefore, the IRS policy is in contravention to the purposes of the Bankruptcy Code, which include the concept of allowing debtors to have a "fresh start" and this Court should use its equitable powers to find that this policy is in violation of 11 U.S.C. § 525, and require the IRS to consider offers in

compromise from all taxpayers, regardless of their status as bankruptcy debtors.

### IRS' ARGUMENTS

The United States, on behalf of the IRS and the Department of the Treasury, argues that its policy of not considering offers in compromise from bankruptcy debtors is discretionary, and that consideration of such offers is also discretionary, not mandatory. In support of this argument, the IRS refers to Section 7122 which states that "the Secretary 'may' compromise any civil or criminal tax case prior to referral to the Department of Justice, in accord with applicable procedures," and various cases which state that courts cannot compel acceptance of compromises by the IRS. *See United States' Memorandum of Law* at 5. Additionally, the IRS states that once a case has been referred to the Department of Justice, § 7122 places settlement authority with the Department of Justice, removing it from the hands of the IRS. Defendants state that this Court cannot "direct *which* executive agency should consider the settlement—especially when such direction conflicts with the language of Internal Revenue Code Section 7122(a)." *Id.* at 6.

The IRS states that this policy is applied to all debtors in bankruptcy and is not discriminatory. The Bankruptcy Code provides protections for property of taxpayers which becomes part of the bankruptcy estate, and an automatic stay prohibits certain types of collection activities by creditors in order to protect the bankruptcy estate for distribution in accordance with the priorities set forth in the Bankruptcy Code. The IRS states that once a taxpayer has filed bankruptcy under any chapter of the Bankruptcy Code, "bankruptcy laws and procedures apply and an investigation of an offer in compromise (in accordance with nonbankruptcy administrative procedures) could be considered a violation of the automatic stay." *See United States' Memorandum of Law* at 2. The IRS states that its policy merely shifts authority to consider offers in compromise from the IRS to the Department of Justice if a taxpayer is in bankruptcy, and that nothing prohibits the Department of Justice from considering such compromises, nor does it prevent the debtors from seeking compromise of a nondischarged tax debt from the IRS once the bankruptcy is completed.

The IRS further states that debtors' argument that § 525 is applicable to its actions in this case "stretches Bankruptcy Code Section 525 well beyond its plan language and well beyond any reasonable policy considerations underlying that section." *See Id.* at 8–9. It states that an offer in compromise is not comparable to the "license, permit, charter, franchise, or other similar grant" contemplated by § 525, and therefore the policy is not a violation of the literal provisions of § 525. The IRS further states that the policy does not conflict with the "fresh start" objectives of the Bankruptcy Code because its priority claims are nondischargeable under the Bankruptcy Code and are thus excepted from the "fresh start" objectives of the Bankruptcy Code. The IRS asks this Court to refuse to force the IRS to consider debtors' offer in compromise, and to enter judgment on behalf of the United States.

### LEGAL AUTHORITY

The debtors assert that using 11 U.S.C. §§ 105 and 525, that this Court can require the IRS to consider offers in compromise from bankruptcy debtors to avoid discrimination between bankruptcy debtors and non-debtor taxpayers. A Bankruptcy Court is entitled to exercise its equitable powers pursuant to § 105 of the Bankruptcy Code, which provides, in pertinent part:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude

the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

The relevant provision in this adversary proceeding relates to prohibition of discrimination by governmental or quasi-governmental units. Section 525(a) provides, in pertinent part, as follows:

"[A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, *condition such a grant to, discriminate with respect to such a grant against,* deny employment to, terminate the employment of, or discriminate with respect to employment against, *a person that is or has been a debtor under this title* or a bankrupt or a debtor under the Bankruptcy Act [former 11 U.S.C. §§ 1 et seq.], or another person with whom such bankrupt or debtor has been associated, *solely because such bankrupt or debtor is or has been a debtor under this title* or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act."

11 U.S.C. § 525(a) (emphasis provided).

■ The legislative history of § 525 provides further insight into Congress' intent in enacting this provision. The statute applies to three specific types of discrimination. "The prohibition extends only to discrimination or other action (1) based solely on the basis of the bankruptcy, (2) on the basis of insolvency before or during bankruptcy prior to a determination of discharge, or (3) on the basis of nonpayment of a debt discharged in the bankruptcy case," which is the basis for the decision in *Perez* which this statute was enacted to codify. *See Perez v. Camp-*

*bell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). In this case, debtors assert discrimination solely on the basis of bankruptcy. The legislative history further provides:

"In addition, the section is not exhaustive. *The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination.* The courts have been developing the *Perez* rule. This section permits further development to prohibit actions by governmental or quasi-governmental organizations that perform licensing functions, such as a State bar association or a medical society, *or by other organizations that can seriously affect the debtors' livelihood or fresh start,* such as exclusion from a union on the basis of discharge of a debt to the union's credit union ... This section is not so broad as a comparable section proposed by the Bankruptcy Commission, H.R. 31, 94th Cong., 1st Sess. § 4–508 (1975), which would have extended the prohibition to any discrimination, even by private parties. Nevertheless, it is not limiting either, as noted. The courts will continue to mark the contours of the anti-discrimination provision in pursuit of sound bankruptcy policy."

H.Rept. No. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. at p. 367, 1978 U.S.Code Cong. & Ad. News at pp. 5963, 6323 (1977) (emphasis added).

■ The statute and legislative history, when read together, clearly indicate that Congress did not intend § 525 to be all-inclusive, but instead intended to prohibit bankruptcy-based discrimination "that can seriously affect the debtors' livelihood or fresh start." *Id.*

■ The I.R.S. is correct in its assertion that it cannot be compelled to accept an offer in compromise. *See Carroll v. Internal Revenue Service,* 14 A.R.T.R.2d 5564 (E.D.N.Y.1964). Furthermore, the decision on whether or not the I.R.S. accepts

an offer in compromise is discretionary. 26 U.S.C. § 7122(a) (stating that "The Secretary *may* compromise any civil or criminal case arising under the internal revenue laws"). However, the statute sets forth various methods for evaluation of offers in compromise, as follows:

**(c) Standards for evaluation of offers.—**

**(1) In general.**—The Secretary shall prescribe guidelines for officers and employees of the Internal Revenue Service to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute.

**(2) Allowances for basic living expenses.—**

**(A) In general.**—In prescribing guidelines under paragraph (1), the Secretary shall develop and publish schedules of national and local allowances designed to provide that taxpayers entering into a compromise have an adequate means to provide for basic living expenses.

**(B) Use of schedules.**—The guidelines shall provide that officers and employees of the Internal Revenue Service shall determine, on the basis of the facts and circumstances of each taxpayer, whether the use of the schedules as published under subparagraph (A) is appropriate and shall not use the schedules to the extent such use would result in the taxpayer not having adequate means to provide for basic living expenses.

**(3) Special rules relating to treatment of offers.**—The guidelines under paragraph (1) shall provide that.—

**(A)** *an officer or employee of the Internal Revenue Service shall not reject an offer-in-compromise from a low-income taxpayer solely on the basis of the amount of the offer* . . .

**(d) Administrative review.**—The Secretary shall establish procedures—

**(1)** for an independent administrative review of any rejection of a proposed offer-in-compromise or installment agreement made by a taxpayer under this section or section 6159 before such rejection is communicated to the taxpayer; and

**(2)** which allow a taxpayer to appeal any rejection of such offer or agreement to the Internal Revenue Service Office of Appeals.

26 U.S.C. § 7122 (italics added).

■ The fact that § 7122 provides that the Secretary "shall" prescribe guidelines, and "shall" make allowances for basic living expenses, and an "officer or employee . . . *shall* not reject an offer-in-compromise . . . solely on the basis of the amount of the offer" indicates to this Court that consideration of an offer in compromise is not discretionary, whereas the final acceptance or rejection is discretionary based upon the guidelines set forth in the statute.

In fact, at least one court has held that the I.R.S. must consider compromises. *United States v. Garden State National Bank,* 465 F.Supp. 437 (D.C.N.J.1979). "While the grant of authority to compromise does not command that a compromise agreement be reached, it does imply a mandate to negotiate, to make the effort, to explore the potential for compromise before deciding unilaterally whether or not to refer." *Id.* at 439–40. Debtors have also cited authority which provides that once a decision is made to deny an application based upon its merits, the courts will not interfere. *See In re Will Rogers Jockey & Polo Club, Inc.,* 111 B.R. 948 (Bkrtcy. N.D.Okl.1990). The assumption being that the application must first be considered on its merits to avoid a finding that rejection or denial was discriminatory. Additionally, 26 U.S.C. § 7122 provides for administrative review of rejected offers before the taxpayer is even notified of the rejection, and further appeals by the taxpayer are allowed. 26 U.S.C. § 7122(d). Therefore, by not having an offer in compromise even considered, debtor-taxpayers are denied many additional protections available to non-debtor taxpayers in compromise of their tax obligations.

The I.R.S. also argues that since the priority tax debt would be non-dischargeable in a Chapter 13 case unless paid in full, that the I.R.S.'s failure to consider the offer in compromise does not affect the debtors' rights in bankruptcy. However, the I.R.S. has failed to consider the fact that, if the tax debt were compromised, a lesser amount would be required to be paid under the Chapter 13 plan. Therefore, the failure to consider the debtors' offer in compromise may constitute discrimination as only bankruptcy debtors are not given the alternative for compromise of their tax claims based on the guidelines prescribed by the Secretary. Additionally, the IRS neglects to address the fact that its new policy is based solely on the basis of bankruptcy, which is a different type of discrimination contemplated by § 525, separate from discrimination against those with dischargeable debts. The intent of § 525, as discussed hereinabove, is to prohibit all three types of discrimination against individuals in bankruptcy.

The IRS states that "the Secretary 'may' compromise any civil or criminal tax case prior to referral to the Department of Justice, in accord with applicable procedures." *See United States' Memorandum of Law* at 5. However, the IRS has ignored the words "in accord with applicable procedures." The Court reads this portion of § 7122 to mean that the Secretary must use those procedures outlined in the statute in making the decision whether or not to compromise a tax claim. The fact that the authority to make such a compromise may transfer to the Department of Justice after a taxpayer has filed bankruptcy is of no importance. It does not matter which agency of the government has authority over compromise; whichever agency is responsible for such compromise must actually consider them based on the information contained in such offers and in accordance with the procedures set forth in § 7122, without regard to whether the applicant has filed bankruptcy.

This Court also finds the IRS' argument that investigation of offers in compromise may be a violation of the automatic stay to be unpersuasive. This Court has routinely allowed the IRS or other governmental agencies to lift the stay in order to investigate the possibility of compromise of tax claims. Additionally, creditors have the right to examine the debtors at a § 341 meeting, the right to request examination of the debtors under Bankruptcy Rule 2004, and the right to utilize the U.S. Trustee's services in reviewing financial reports and other documents filed by debtors. There is binding precedent in this jurisdiction allowing the IRS such relief in order to protect the interests of the IRS in holding bankruptcy petitioners to the same standard as non-debtors. The mere fact that a debtor submits an offer in compromise to the IRS for review has been held by this Court to be an implicit agreement by the debtor to be subjected to additional scrutiny. In making such an application, a debtor is voluntarily agreeing to follow the procedures set forth in § 7122 and those developed by the Secretary in order to reduce their tax liability and accomplish reorganization to achieve the fresh start offered under the Bankruptcy Code.

In most bankruptcy cases, the debtor(s) have many problems in addition to tax obligations. This is especially true for small entrepreneurs who need to assemble assets and employees for a venture, and cannot resolve their problems without filing for bankruptcy protection. In bankruptcy, debtors can, among other things, adjust the value of secured claims and cure defaults on leases and installment sales contracts. The IRS' refusal to consider an offer in compromise is not only discriminatory to debtors, it is short-sighted by the IRS, as debtors who are able to compromise secured claims will often have more funds available to pay priority tax claims. Failure to consider offers in compromise made by bankruptcy debtors, denies them access to the procedures set forth in § 7122 which are available to all other taxpayers. Congress has never included

such an exclusion through legislation, and this Court does not believe that Congress intended to authorize the IRS or any other agency to refuse to consider offers in compromise which were properly submitted merely because the taxpayer had filed bankruptcy.

## CONCLUSION

It is apparent that Congress intended to prohibit discrimination against debtors who seek relief under the Bankruptcy Code when such discrimination is based solely on the bankruptcy filing. Here, the I.R.S. has indicated that it has a different policy for consideration of offers in compromise submitted by bankruptcy debtors than the policy applied to non-debtor taxpayers. This Court finds that the IRS' policy constitutes discrimination as prohibited by § 525(a). Section 7122 provides the only method by which a taxpayer may seek to legally compromise a tax obligation. To deny a group of taxpayers the opportunity for such consideration is discriminatory when it is based solely on the bankruptcy status of the taxpayer and not on the merits of the offer. The Bankruptcy Code provides methods by which creditors can ascertain the financial status of the debtors, and creditors can request lifting of the automatic stay in order to pursue collection activities or in-depth investigation of debtors' financial resources. The Bankruptcy Code merely provides additional protection to bankruptcy debtors which is not available to non-debtor taxpayers. The provisions of the Bankruptcy Code do not excuse governmental agencies such as the IRS from processing applications as required by statute merely because an applicant has filed bankruptcy. Rather, agencies must proceed with such consideration in a manner allowed under the Bankruptcy Code.

This Court finds that the I.R.S. has failed to show that its policy of not considering offers in compromise from bankruptcy debtors is not discriminatory. The stipulations of the parties clearly show that the policy is solely based upon the filing of bankruptcy, which is discriminatory under 11 U.S.C. § 525. The debtors are not requesting that the Court force the I.R.S. to accept their offer in compromise, which is beyond this Court's authority; rather, they request that the Court assist them in getting their offer in compromise considered by the I.R.S. under the standards applied to non-Chapter 13 applicants.

The I.R.S. admits in its Motion to Dismiss that it has changed its policy regarding all bankruptcy debtors who submit offers in compromise. While the I.R.S.'s decision about whether or not to accept an offer in compromise may be discretionary, this Court finds that this discretion does not extend to choosing which offers it will consider and the intentional exclusion of bankruptcy debtors from consideration. It is accordingly,

**ORDERED** that the motions of the United States' and the debtors for Judgment on the Stipulated Record is hereby **GRANTED,** as no issues of fact exist to preclude such judgment; It is further,

**ORDERED** that judgment is awarded on behalf of the debtors, for reasons set forth hereinabove, and that the IRS is compelled to consider offers in compromise submitted by bankruptcy debtors in accordance with the provisions of § 7122 and the procedures set forth by the Secretary which are not in conflict with this Order. The automatic stay provisions of the Bankruptcy Code are modified to permit the § 7122 investigation.

**IT IS SO ORDERED.**