**In the Matter of William K. HOLMES, Debtor.**

**William K. HOLMES, Movant,**

v.

**UNITED STATES of America, Respondent.**

**No. 02–52793 RFH.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Sept. 12, 2003.

Joseph J. Burton Jr., David D. Aughtry, Atlanta, GA, for Movant.

Michael N. Wilcove, Washington, DC, for Respondent.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, JR., Chief Judge.

William K. Holmes, Movant, filed on May 15, 2003, an Amendment to Motion to Determine Tax Liability and Objection to Claim. The United States of America, Respondent, acting on behalf of the Internal Revenue Service, filed a response on May 23, 2003.[1] The Court, having considered the motion, the response, and the arguments of counsel, now publishes this memorandum opinion.

Movant owned some 3.2 million shares of stock in WorldCom, Inc. Movant's stock at one time had a value of about $200 million. WorldCom had financial problems

---

**1.** Movant and Respondent have, at times, listed the Internal Revenue Service as the respondent in this contested matter. The Internal Revenue Service has no capacity to sue or be sued and the real party in interest is the United States of America. *United States v. Laughlin (In re Laughlin),* 210 B.R. 659, 660 (1st Cir. BAP 1997) (citing *Blackmar v. Guerre,* 342 U.S. 512, 514, 72 S.Ct. 410, 411, 96 L.Ed. 534 (1952)).

and its stock decreased in value. Most of Movant's stock was sold as a result of certain "margin calls." The sales of Movant's stock resulted in substantial federal income tax obligations. Movant was unable to pay his tax obligations.[2]

Movant filed a petition for relief under Chapter 11 of the Bankruptcy Code on July 1, 2002. Movant intends to sell his primary asset, some 6,700 acres of land, through a Chapter 11 plan of liquidation. Movant believes that he can obtain a better price for the land through a Chapter 11 liquidation than through a Chapter 7 liquidation.[3]

Respondent filed on May 19, 2003, an amended proof of claim for $10,558,072.20. Respondent asserts an unsecured priority claim of $9,372,245.01. The remainder of Respondent's claim is a general unsecured claim. Respondent's claim is for Movant's federal income tax obligations.

The Internal Revenue Code provides that Respondent may compromise any civil or criminal tax obligation. I.R.C. § 7122(a) (2002).[4] The Secretary of the Treasury prescribes guidelines for Respondent to determine whether an offer-in-compromise is adequate and should be accepted. I.R.C. §§ 7122(c), 7701(a)(11)(2002).

Movant made an Offer in Compromise (IRS Form 656) on February 26, 2003. Movant offered to compromise his tax obligations by making a cash payment of $621,236. Respondent concedes that Movant filed the proper "paperwork" for an offer-in-compromise. Respondent did not process Movant's Offer in Compromise. Respondent sent a letter dated March 19, 2003, "returning" Movant's Offer in Compromise. The letter states, in part: "An offer will not be considered while a bankruptcy proceeding is open."

Movant contends that Respondent's policy of not considering an offer-in-compromise during the pendency of a bankruptcy proceeding is prohibited by section 525(a) of the Bankruptcy Code.[5] Movant does not request that the Court require Respondent to accept the offer-in-compromise. Rather, Movant urges the Court to require Respondent to consider the offer-in-compromise in the same manner as it considers offers submitted by non-debtor taxpayers. Section 525(a) provides in part:

**11 USC § 525. Protection against discriminatory treatment**

(a) [A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title .... solely because such bankrupt or debtor is or has been a debtor under this title .... has been insolvent before the commence-

---

**2.** Movant's counsel stated on May 12, 2003, that Movant's tax returns show his tax obligations to be about $9,000,000.

**3.** 11 U.S.C.A. § 1123(a)(5)(D), (b)(4), § 1129(a)(11)(West 1993). (chapter 11 plan may provide for sale of part or all of the property of the estate.)

**4.** This section provides:
§ 7122. Compromises

**(a) Authorization.**—The Secretary may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney General or his delegate may compromise any such case after reference to the Department of Justice for prosecution or defense. I R C § 7122(a)(2002).

**5.** 11 U.S.C.A. § 525(a)(West Supp.2003).

ment of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

The legislative history to section 525 provides in part:

This section is additional debtor protection. It codifies the result of *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), which held that a State would frustrate the Congressional policy of a fresh start for a debtor if it were permitted to refuse to renew a drivers [sic] license because a tort judgment resulting from an automobile accident had been unpaid as a result of a discharge in bankruptcy.

. . .

In addition, the section is not exhaustive. The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination. The courts have been developing the Perez rule. This section permits further development to prohibit actions by governmental or quasi-governmental organizations that perform licensing functions, such as a State bar association or a medical society, or by other organizations that can seriously affect the debtors' livelihood or fresh start, such as exclusions from a union on the basis of discharge of a debt to the union's credit union.

. . .

The courts will continue to mark the contours of the anti-discrimination provision in pursuit of sound bankruptcy policy. (HR Rep No. 595, 95th Cong, 1st Sess 366–367 (1977); S Rep No. 989, 95th Cong, 2d Sess 81 (1978)[, U.S.Code Cong. & Admin.News 1978, pp. 5963, 5787])

Respondent's Internal Revenue Manual provides in part:

Internal Revenue Manual

Part 5—Collecting Process

Chapter 5.8—Offer in Compromise

5.8.3—Processability

5.8.3.2.—Determining Processability

5.8.3.2.1.—Not Processable (11–30–2001)

(1) An offer is not processable only if one or both of these two criteria is present:

(a.) Taxpayer Not in Compliance—[Taxpayer has not filed all tax returns]

(b.) Taxpayer in Bankruptcy—An offer will not be considered during a bankruptcy proceeding. Once a bankruptcy is discharged or dismissed an offer can be considered.

Respondent's Internal Revenue Manual also provides in part:

Internal Revenue Manual

Part 25—Special Topics

Chapter 25.17—Bankruptcy

25.17.4—Common Bankruptcy Issues

25.17.4.7—Offers–in–Compromise And Bankruptcy

25.17.4.7—Offers–in–Compromise And Bankruptcy (07–01–2002)

(1) Introduction. The Bankruptcy Code provides a means for balancing the interests of the debtor (taxpayer) and the Service, as does an offer-in-compromise (OIC). Too many administrative and legal problems would be created if a tax liability was simultaneously the subject of a court-supervised bankruptcy case and the administrative offer-in-compromise process.

(2) General Policy. When a taxpayer has filed for bankruptcy protection, the

Service's general policy on offers-in-compromise is not to consider offers-in-compromise based on doubt as to collectability or effective tax administration from a taxpayer in bankruptcy.

(3) General Rule. Thus, the general rule on OICs by the Service is that:

> (a.) Offers-in-compromise should be returned to the debtor as "Not Processable" if the taxpayer is a debtor in a bankruptcy case for which a discharge has not yet been entered.

> (b.) However, in appropriate cases, the Service may work with the debtor within the bankruptcy case to achieve a result that is in the best interests of both the debtor and the Service.

Two bankruptcy courts have reached different conclusions as to whether the IRS's refusal to consider a debtor's offer-in-compromise is prohibited by section 525(a). In *Macher v. United States (In re Macher)*,[6] the bankruptcy court held that an offer-in-compromise is not "a license, permit, charter, franchise, or similar grant" under section 525(a). The bankruptcy court stated that "Congress could easily have chosen language which would prohibit any governmental discrimination against bankruptcy debtors, but it did not do so." The bankruptcy court agreed with the Sixth Circuit Court of Appeals that the "language chosen by Congress indicates that the intended scope of [section 525(a)] is the 'government's role as a gatekeeper in determining who may pursue certain livelihoods' and to prohibit governmental actions punishing bankruptcy debtors 'by denying them permission to pursue certain occupations or endeavors.'" *Toth v. Michigan State Housing Devel. Auth.*, 136 F.3d 477, 480 (6th Cir.) cert. denied, 524 U.S.

954, 118 S.Ct. 2371, 141 L.Ed.2d 739 (1998). The bankruptcy court, however, then held that it could order the IRS "to at least receive and consider a Chapter 11 debtor's offer in compromise [ ] consistent both with the Congressional policy encouraging such offers by taxpayers generally and the purposes of the Bankruptcy system."

In *Mills v. United States (In re Mills)*,[7] the bankruptcy court held that the IRS's policy was discrimination prohibited by section 525(a). The bankruptcy court stated that I.R.C. § 7122 provides the only method by which a taxpayer may seek to legally compromise a tax obligation. The bankruptcy court held that to deny a group of taxpayers the opportunity for consideration is discriminatory when based solely on the bankruptcy status of the taxpayers and not on the merits of the offer.

■ Turning to the case at bar, Movant argues:

> Within the term "license" as used in Section 525(a) is the universal right to be considered for an Offer–in–Compromise. A license is the permission to do an act which, without such permission, would otherwise not be allowable. BLACKS LAW DICTIONARY 919–20 (6th ed.1990). Absent 26 U.S.C. § 7122, the IRS would have no authority to compromise a tax debt. Only Section 7122 gives a taxpayer permission to offer to compromise an undisputed tax debt for less than full payment, and only that section provides the IRS with the authority to consider accepting such a compromise. *Laurins v. Commissioner*, 889 F.2d 910 (9th Cir.1989). Section

---

6. 2003 WL 21541281 (Bankr.W.D.Va., May 29, 2003) (Stone, J.).

7. 240 B.R. 689 (Bankr.S.D.W.Va.1999) (Pearson, J.). See also *Chapman v. United States (In re Chapman)*, 1999 WL 550793 (Bankr. S.D.W.Va., June 23, 1999) (Pearson, J.).

7122 is a license to negotiate less than full payment of a tax debt, in full and complete satisfaction of that debt and the IRS's refusal to even consider the Debtor's Offer–in–Compromise is a violation of the anti-discrimination rule of Section 525(a).

Reply to the Internal Revenue's Response to Debtor's Amended Motion to Determine Tax Liability and Objection to Claim, p 3–4, Docket No. 88 (filed June 13, 2003).

The Court is not persuaded that an offer-in-compromise is a license as that term is used in section 525(a). "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interrupted as taking their ordinary, contemporary common meaning." *McMillian v. FDIC,* 81 F.3d 1041, 1055 (11th Cir.1996) (quoting *Perrin v. United States,* 444 U.S. 37, 42–43, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979)).

Black's Law Dictionary defines license, in part, as follows:

**license,** *n.* **1.** A revocable permission to commit some act that would otherwise be unlawful; esp., an agreement (not amounting to a lease or profit á prendre) that it will be lawful for the licensee to enter the licensor's land to do some act that would otherwise be illegal, such as hunting game. See SERVITUDE. **2.** The certificate or document evidencing such permission.–**license,** *vb.*

BLACK'S LAW DICTIONARY 931 (7th ed.1999).

The Court is persuaded by the reasoning of *In re Macher* that an offer-in-compromise is not a "license, permit, charter, franchise, or other similar grant." Thus, Respondent's refusal to receive and consider Movant's Offer in Compromise is not prohibited by section 525(a) of the Bankruptcy Code.

The Court now turns to consider whether there are other grounds to order Respondent to consider an offer-in-compromise during the pendency of a Chapter 11 bankruptcy case.

Section 105(a) of the Bankruptcy Code[8] provides:

**§ 105.  Power of court.**

**(a)** The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

In *Jove Engineering, Inc. v. IRS*[9] the Eleventh Circuit Court of Appeals stated, in part,

Section 105(a) states "[t]he court may issue *any* order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) (emphasis added). Sovereign immunity aside, § 105 uses the broad term "any" which encompasses all forms of orders including those that award monetary relief.  The term "any" should be given this broad construction under the "settled rule [ ] that a statute must, if possible, be construed in such fashion that every word has some operative effect." *United States v. Nordic Village,* 503 U.S. 30, 36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992).  The broad term "any" is only limited to those orders that are "necessary or appropriate" to carry out the Bankruptcy Code.

**8.**  11 U.S.C.A. § 105(a)(West 1993).

**9.**  92 F.3d 1539 (11th Cir.1996).

Therefore, the plain meaning of § 105(a) encompasses *any* type of order, whether injunctive, compensatory or punitive, as long as it is "necessary or appropriate to carry out the provisions of" the Bankruptcy Code. *See Rice v. United States,* 78 F.3d 1144, 1151 (6th Cir.1996). We must construe § 105(a) by this plain meaning unless such construction presents "the rare case [ ] in which literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989).

92 F.3d at 1554.

*Collier on Bankruptcy* states, in part, as follows:

The hallmark of chapter 11 is flexibility. The debtor in possession is offered considerable discretion in the ordinary operation of the business, constrained generally only by a business judgment rule. The plan negotiation process is intended to lead normally to a consensual plan under which the debtor and a majority of creditors have agreed to both business and financial plans that offer some realistic chance of success. The court is given considerable discretion in evaluating a debtor's proposed use of property, offer of adequate protection, proposed borrowing, and other business decisions.

7 *Collier on Bankruptcy* ¶ 1100.01, p. 1100–6 (15th ed. rev.2003).

Movant wants to sell his primary asset, some 6,700 acres of land, through a Chapter 11 plan of liquidation. Movant believes that he can obtain a better price for the land through a Chapter 11 liquidation than through a Chapter 7 liquidation.

In *United States v. Deer Park, Inc. (In re Deer Park, Inc.),*[10] the Bankruptcy Appellate Panel for the Ninth Circuit stated in part:

[a] debtor's continuing participation in a planned, orderly [chapter 11] liquidation may in fact be necessary to bring about the maximum recovery for the creditors, as opposed to the amount realized in a forced sale. The Bankruptcy Code recognizes this in § 1129(a)(11), by providing that liquidation may be contemplated in a valid Chapter 11 plan of reorganization, despite the label "reorganization." Although the word "reorganization" might commonly bring to mind ongoing operations, Congress explicitly placed language providing for liquidation within Chapter 11, which is titled "Reorganization." Had Congress not intended to include liquidation as an acceptable type of reorganization plan, then presumably all provisions dealing with liquidation would fall within Chapter 7, which is specifically titled "Liquidation." We must therefore assume Congress placed this provision in Chapter 11 intentionally.

Liquidation under a Chapter 11 plan is not the same as a Chapter 7 liquidation. A liquidation under Chapter 11 allows the debtor in possession, one who is presumably more familiar with the assets of the debtor's organization and its respective values, the ability to plan for an orderly divestiture of the assets over time as opposed to a Chapter 7 trustee, who is generally less familiar with the debtor's assets. A Chapter 11 plan, even through a liquidating plan, must still conform to the same statutory requirements of any other Chapter 11 reorganization. A liquidating plan is desirable when the debtor in possession can bring about a greater recovery for

---

**10.** 136 B.R. 815 (9th Cir. BAP 1992), *aff'd* 10 F.3d 1478 (9th Cir.1993).

the creditors than would a straight liquidation under Chapter 7.

136 B.R. at 818

Section 7122 of the Internal Revenue Code provides that Respondent may compromise any tax obligation. Guidelines are prescribed for Respondent to determine whether an offer-in-compromise is adequate and should be accepted.

■ "The decision to accept or reject a compromise offer is discretionary and cannot be compelled by any action." *Addington v. United States,* 75 F.Supp.2d 520, 524 (S.D.W.Va.1999). *See also In re Davison,* 156 B.R. 600, 602 (Bankr.E.D.Ark.1993).

The "decision to accept or reject an offer to compromise, as well as the terms and conditions agreed to, is left to the discretion of the Secretary." Treas. Reg. § 301.7122–1(c)(1)(2002), (published at 26 C.F.R. § 301.7122–1).

■ Grounds for compromise include doubt as to liability, doubt as to collectability, and to promote effective tax administration. Treas. Reg. § 301.7122–1(b)(2002).

■ "Section 7122 is the exclusive method by which tax cases may be compromised. . . . [T]he exclusivity of § 7122 bars enforcement of apparent agreements under general concepts of accord and satisfaction." *Brooks v. United States,* 833 F.2d 1136, 1145–46 (4th Cir.1987).

■ The purpose of an offer-in-compromise is to facilitate the settlement of tax liabilities without litigation. *United States v. White,* 477 F.2d 757, 759 n. 3 (5th Cir.1973) *cert. denied* 419 U.S. 872, 95 S.Ct. 132, 42 L.Ed.2d 111 (1974).

Respondent's Internal Revenue Manual states that "too many administrative and legal problems would be created if a tax liability was simultaneously the subject of a court-supervised bankruptcy case and

the administrative offer-in-compromise process." Internal Revenue Manual § 25.17.4.7(1).

The Internal Revenue Code, however, provides that Respondent may compromise *any* civil or criminal tax obligation arising under the internal revenue laws. I.R.C. § 7122(a). Neither the Bankruptcy Code, the Internal Revenue Code, nor the Treasury Regulations provide that Respondent cannot consider an offer-in-compromise during the pendency of a Chapter 11 bankruptcy case. This provision is only found in Respondent's Internal Revenue Manual.

■ "Procedures in the Internal Revenue Manual are intended to aid in the internal administration of the IRS. . . ." *Carlson v. United States (In re Carlson),* 126 F.3d 915, 922 (7th Cir.1997) *cert. denied* 523 U.S. 1060, 118 S.Ct. 1388, 140 L.Ed.2d 647 (1998).

■ "It is well-settled, however, that the provisions of the [Internal Revenue Manual] are directory rather than mandatory, are not codified regulations, and clearly do not have the force and effect of law." *Marks v. Commissioner,* 947 F.2d 983, 986 n. 1 (D.C.Cir.1991).

■ "Procedures or rules adopted by the IRS are not law." *Keado v. United States,* 853 F.2d 1209, 1214 (5th Cir.1988).

■ The provisions of the Internal Revenue Manual "govern the internal affairs of the Internal Revenue Service. They do not have the force and effect of law." *Valen Manufacturing Co. v. United States,* 90 F.3d 1190, 1194 (6th Cir.1996). *See United States v. Horne,* 714 F.2d 206, 207 (1st Cir.1983); *Einhorn v. DeWitt,* 618 F.2d 347, 349–50 (5th Cir.1980).

*See generally Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981). (The Social Security

"Claims Manual is not a regulation. It has no legal force, and it does not bind the [Social Security Administration]. Rather, it is a 13–volume handbook for internal use by thousands of [Social Security Administration] employees. . . .")

■ Thus, Respondent's internal policy of not considering an offer-in-compromise during the pendency of a Chapter 11 bankruptcy proceeding does not have the force and effect of law.

■ Federal agencies must obey all federal laws, not just those they administer. Federal courts are required to set aside federal agency action that "is not in accordance with the law." *FCC v. Nextwave Personal Communications, Inc.*, 537 U.S. 293, 123 S.Ct. 832, 838, 154 L.Ed.2d 863 (2003).

■ Movant may be unable to propose a confirmable Chapter 11 plan unless he can "work something out" with Respondent.[11] The negotiation process of Chapter 11 requires good faith efforts by the debtor and his creditors. In the Court's view, a basic principle of Chapter 11 and the offer-in-compromise procedure is to provide an honest but unfortunate taxpayer with an opportunity to work out his financial and tax problems. Respondent's policy not to participate in the offer-in-compromise procedure while a taxpayer is in bankruptcy frustrates the basic principles of the Bankruptcy Code and section 7122 of the Internal Revenue Code.

The Court basically agrees with the reasoning of *In re Macher*. The Court is persuaded that it has authority under section 105 of the Bankruptcy Code and the Eleventh Circuit's opinion in *Jove Engineering*, to order Respondent to receive and consider Movant's Offer In Compromise. The Court is persuaded that such an order is necessary and appropriate to carry out the Congressional intent found in Chapter 11 of the Bankruptcy Code.

An order in accordance with this memorandum opinion will be entered this date.

---

**11.** Unless Respondent agrees to a different treatment, its priority claim would have to be paid over a period not exceeding six years. 11 U.S.C.A. § 1129(a)(9)(c) (West 1993).