### In re Cheryl A. SHOPE and Arnold L. Shope, Debtors.

#### No. 02–54568.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

June 28, 2006.

John F. Cannizzaro, Marysville, OH, for Debtors.

### *MEMORANDUM OPINION ON DEBTORS' MOTION FOR ORDER DIRECTING THE INTERNAL REVENUE SERVICE TO CONSIDER DEBTORS' OFFER IN COMPROMISE*

C. KATHRYN PRESTON, Bankruptcy Judge.

This cause came on for hearing on April 6, 2006, on the Debtors' Motion for Order Directing the Internal Revenue Service ("IRS") to Consider Debtors' Offer in Compromise (Doc. 133), filed May 20, 2005, and the Response of the United States in Opposition to Debtors' Motion (Doc. 144), filed January 10, 2006. Present at the hearing were attorney John F. Cannizzaro, representing the Debtors, and attorney Andrew M. Malek, representing the United States. The Court took the matter under advisement, and after consideration

of the issues raised, is now prepared to render its decision.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the standing General Order of Reference entered in this District. This matter is a core proceeding pursuant to 28 USC § 157(b)(2)(O).

## I. Factual Background

Cheryl and Arnold Shope ("Debtors") filed a voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code on April 10, 2002, and their Chapter 13 Plan was confirmed in August, 2002. Some time later, a change in circumstances prompted the Debtors to submit to the IRS an offer in compromise [1] in an attempt to reduce their tax liability. The IRS returned the submitted paperwork with a letter explaining that "[a]n offer [in compromise] will not be considered while a bankruptcy proceeding is open." (Letter from Ms. Valerio of the IRS to Ms. Shope of March 3, 2005, attached as Ex. A to Debtors' Motion.) At the time of the hearing, Debtors' outstanding balance on IRS tax claims totaled $213,592.39, consisting of $191,655.79 in secured claims, $21,707.54 in priority claims, and $229.06 in unsecured claims. (Hearing Transcript at 10:21.)

## II. Arguments of the Parties

Debtors now seek an order of court directing the IRS to consider their offer in compromise as it would consider any other offer in compromise from taxpayers not currently engaged in bankruptcy proceedings. Debtors base their argument on the antidiscrimination provisions of 11 U.S.C. § 525 and the broad authority granted a

bankruptcy court by 11 U.S.C. § 105 to "issue any order ... necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

The United States opposes the Debtors' Motion, relying on the discretion provided the Secretary of the Treasury under 26 U.S.C. § 7122(a) which states, "The Secretary *may compromise* any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense. . . ." (Emphasis added.) Additionally, the Secretary is vested with the authority to establish guidelines to be used by the IRS in evaluating whether offers in compromise should be accepted or denied. 26 U.S.C. § 7122(c)(1). Included among these guidelines are the directions of the Internal Revenue Manual, which provides in relevant part, as follows:

> (1) An offer in compromise will be deemed not processable if . . .:
>
> > (b.) Taxpayer in Bankruptcy—An offer will not be considered during a bankruptcy proceeding.

Internal Revenue Manual 5.8.3.4.1(1)(b.) (2004).

> (2) Service Policy. When a taxpayer has filed for bankruptcy protection, the IRS's policy on offers in compromise is not to consider administrative offers in compromise from a taxpayer in bankruptcy.

Internal Revenue Manual 5.9.4.9(2) (2004).

> (3) Rule. The rule to follow on OICs by the Service:
>
> > (a.) Administrative offers in compromise are returned to the debtor as "Not Processable" if the tax-

---

1. An offer in compromise is a proposal by a taxpayer to the IRS to settle his or her tax liability by payment of some amount less than that amount actually owed. Internal Revenue Service Form 656, Offer in Compromise, p. 2.

The offer in compromise, if processable, will be evaluated by the IRS. "Acceptance of an offer in compromise will conclusively settle the liability of the taxpayer." Treas. Reg. § 301.7122–1(e)(5) (2002).

payer is a debtor in a bankruptcy case for which a discharge has not yet been entered.

Internal Revenue Manual 5.9.4.9(3)(a.) (2004).

In short, before the IRS will evaluate the merits of a taxpayer's offer in compromise to decide whether acceptance or rejection is appropriate, the IRS first determines whether the offer is even processable. Offers in compromise from taxpayers engaged in open bankruptcy proceedings are automatically deemed not processable and returned to the taxpayer; those offers are ineligible for the IRS' offer in compromise process.

At issue, then, is the IRS policy of blanket prohibition against considering offers in compromise submitted by debtors in bankruptcy.

## III. Legal Analysis

### A. The Anti–Discrimination Provisions of § 525

 Debtors claim that "the Internal Revenue Service rejected [their offer in compromise] for the sole reason that Mr. and Mrs. Shope are engaged in a bankruptcy proceeding."[2] (Debtors' Motion, at 2.) Debtors argue that the IRS policy is a direct violation of 11 U.S.C. § 525, which provides in relevant part as follows:

> [A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to

such a grant against . . . a person that is or has been a debtor under this title . . . solely because such . . . debtor is or has been a debtor under this title[.]

11 U.S.C. § 525(a).

This precise issue, whether the IRS policy of returning without consideration offers in compromise from bankruptcy debtors violates § 525, has been addressed by several courts, with varying results. *Compare Mills v. United States (In re Mills)*, 240 B.R. 689, 698 (Bankr.S.D.W.Va.1999) (finding that the IRS policy constitutes discrimination prohibited by § 525), *and Chapman v. United States (In re Chapman)*, 1999 WL 550793, at *9, 1999 Bankr.LEXIS 1091, at *25 (Bankr.S.D. W. Va. June 23, 1999) (same), *with Macher v. United States (In re Macher)*, 2003 WL 23169807, at *1 (Bankr.W.D.Va. June 5, 2003) ("Section 525 by its terms, even broadly construed, does not prohibit the IRS practice."), *aff'd* 303 B.R. 798 (W.D.Va.2003), *and Holmes v. United States (In re Holmes)*, 298 B.R. 477, 483 (Bankr.M.D.Ga.2003) ("An offer-in-compromise is not a 'license, permit, charter, franchise, or other similar grant.' "), *aff'd sub nom. Internal Revenue Serv. v. Holmes*, 309 B.R. 824 (M.D.Ga.2004).

The court in *Mills* adopted a broad reading of § 525, based in part on the legislative history. "[T]he section is not exhaustive. The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination." *Mills*, 240 B.R. at 695, citing H. Rept. No. 95–595 to ac-

---

**2.** In its letter of March 3, 2005, the IRS actually provided two reasons for returning the Debtors' offer in compromise: 1) the open bankruptcy proceeding, and 2) the Debtors' failure to file all required returns, in this case, Form 941 Employer's Quarterly Federal Tax Return for fourth quarter 2001. (Letter from Valerio to Shope of March 3, 2005, attached as Ex. A to Debtors' Motion.) According to

the Internal Revenue Manual, either one of these conditions would have resulted in the Shopes' offer in compromise being returned as "not processable." Internal Revenue Manual 5.8.3.4.1 (2004). Because neither party mentions this second ground for non-processability, this Court will address only those issues raised by the parties.

company H.R. 8200, 95th Cong., 1st Sess. (1977). Deciding whether to consider an offer in compromise based on bankruptcy status and not on the merits of the offer, the court found, was sufficiently discriminatory to be prohibited by § 525. *Mills*, 240 B.R. at 698.

The court in *Macher*, declining to adhere to *Mills'* broad interpretation, concluded that consideration of an offer in compromise is not a "license, permit, charter, franchise, or other similar grant" as used in § 525.

> Congress could easily have chosen language which would prohibit any governmental discrimination against bankruptcy debtors, but it did not do so. While the Court agrees that it should interpret the statute broadly enough to fulfill the evident intent of Congress in addressing situations comparable to those enumerated in the statutory language, it should not attempt to stretch the statute to cover other types of governmental discrimination different in kind from that subject to the statute.

*Macher*, 2003 WL 23169807, at *1.

The *Macher* court also relied on a Sixth Circuit opinion which addressed the scope of § 525:

> The items enumerated in the statute— licenses, permits, charters, and franchises— ... reveal that the target of § 525(a) is government's role as a gatekeeper in determining who may pursue certain livelihoods. It is directed at governmental entities that might be inclined to discriminate against former bankruptcy debtors in a manner that frustrates the "fresh start" policy of the Bankruptcy Code, by denying them permission to pursue certain occupations or endeavors. The intent of Congress incorporated into the plain language of § 525(a) should not be transformed by employing an expansive understanding of the "fresh start"

policy to insulate a debtor from all adverse consequences of a bankruptcy filing or discharge.

*Toth v. Michigan State Hous. Dev. Auth.*, 136 F.3d 477, 480 (6th Cir.1998).

The *Toth* court did not expressly limit the scope of § 525 to only those governmental actions which involve a debtor's pursuit of a livelihood, and this Court is of the opinion that the protection from discrimination provided by § 525 is somewhat broader than that. However, this Court declines to follow *Mills'* broad reading of § 525 and instead agrees with the reasoning of the court in *Macher*.

The statute prohibits a governmental entity from denying "a license, permit, charter, franchise, or other similar grant" based solely on bankruptcy status. Black's Law Dictionary (8th ed.2004) defines the term "license" generally as permission to commit some act that would otherwise be unlawful. Black's further defines the term "permit" as a certificate evidencing permission, or a license. The term "charter" is defined in pertinent part as an instrument granting rights, liberties or powers to the grantee. The term "franchise" is defined by Black's generally as the sole right granted to engage in business or to sell a good or service in a certain area, or the business or territory controlled by the entity to which such a right is given. Finally, the term "grant" is defined as property or property right transferred, or an agreement that creates a right of any description. Each of these terms refers to a situation in which a governmental unit confers official authorization or permission to engage in some endeavor in which the recipient would not otherwise be privileged to take part. No such authorization or permission is granted through the offer in compromise process. When the IRS accepts a taxpayer's offer in compromise, it does not grant

license, permit, charter or franchise—it simply accepts as full settlement of the taxpayer's obligation an amount less than the full amount of the debt owed. Treas. Reg. § 301.7122–1(e)(5). Likewise, when the IRS refuses to consider a taxpayer's offer in compromise, it does not deny a license, permit, charter or franchise—it simply declines to examine the taxpayer's settlement offer. Clearly, there is benefit conferred by the government upon the successful offeror, in the form of reduced tax liability, but this benefit is not at all in the nature of a license, permit, charter, franchise, or similar grant. This Court declines to stretch the plain meaning of these words to the degree necessary to include the IRS' refusal to consider an offer in compromise among those other government actions prohibited by § 525.

Whatever discrimination Debtors believe they experienced due to the IRS policy, it is not discriminatory treatment of the type contemplated in § 525. Section 525 provides no basis for this Court to order the IRS to consider Debtors' offer in compromise.

## B. The Authority to Issue Any Necessary or Appropriate Order Under § 105

■ Debtors also request that this Court "exercise its authority pursuant to 11 U.S.C. § 105 so as to require the IRS to consider [Debtors'] Offer In Compromise as they would consider any other Offer In Compromise pursuant to the provisions of 26 U.S.C. § 7122." (Debtors' Motion, at 2.) Section 105 provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

Several bankruptcy courts have employed the broad authority granted by § 105 to issue orders requiring the IRS to consider offers in compromise submitted by debtors engaged in bankruptcy cases. The court in *Macher* found that the IRS' practice, while not a violation of § 523, "directly conflicts with the policies underlying the Bankruptcy Code in general and the reorganization provisions of Chapter 11 in particular[.]" *Macher*, 2003 WL 23169807, at *2. Though the court never specifically mentioned the statutory basis for its order directing the IRS to process and consider the Debtor's offer in compromise, on appeal the District Court was persuaded that "the Bankruptcy Court was invoking its broad equitable powers under 11 U.S.C. § 105(a)[.]" *United States v. Macher (In re Macher)*, 303 B.R. 798, 801 (W.D.Va.2003).

The court in *Holmes* agreed with and extended the reasoning in *Macher*, finding that the IRS' practice frustrated the basic principles of *both* the Bankruptcy Code *and* Section 7122 of the Internal Revenue Code regarding compromising tax obligations. *Holmes*, 298 B.R. at 486. Additionally, the IRS' prohibition on considering offers in compromise from bankruptcy debtors was found only in the Internal Revenue Manual, not in code or regulation, and therefore did not have the force and effect of law. *Id.* at 485–86. The *Holmes* court explicitly relied on § 105 to order the IRS to receive and consider the debtor's offer in compromise, such order being "necessary and appropriate to carry out the Congressional intent found in Chapter 11 of the Bankruptcy Code." *Id.* at 486. *Accord In re Peterson*, 317 B.R. 532, 534 (Bankr.D.Neb.2004) (agreeing "completely with the analysis and the reasoning of *Holmes*").

Just as with the application of § 525 discussed earlier, courts considering this precise issue on nearly identical facts have drawn opposite conclusions. Unlike the courts in *Macher, Holmes,* and *Peterson,*

the court in *1900 M Restaurant* held that § 105 provides no basis for commanding the IRS to process and consider a debtor's offer in compromise. *1900 M Restaurant Assocs. v. United States (In re 1900 M Restaurant Assocs.)*, 319 B.R. 302, 315–16 (Bankr.D.D.C.2005). In a thorough discussion, the court in *1900 M Restaurant* analyzed the appropriate exercise of authority pursuant to § 105 from two distinct perspectives.

First, the *1900 M Restaurant* court found that the relief sought—an order directing the IRS to process and consider a debtor's offer in compromise—is in the nature of mandamus, appropriate only in extraordinary circumstances where 1) the plaintiff has a clear right to relief, 2) the defendant has a clear duty to act, and 3) there is no other adequate remedy available to the plaintiff. *1900 M Restaurant Assocs.*, 319 B.R. at 306–07 (citations omitted). The court found that the discretion afforded the IRS under 26 U.S.C. § 7122 extended not only to whether to accept or reject an offer, but also to how those offers would be processed; where such discretion exists, no clear duty to act is owed. *Id.* at 307–09. Additionally, the court found an adequate alternative remedy available to the debtor—debtor can seek compromise of its tax liability through the plan confirmation process. *Id.* at 312–13. For these reasons, the court held that relief in the nature of mandamus is inappropriate.

Second, the court in *1900 M Restaurant* held that use of § 105(a) is clearly limited to those court actions "necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." "The authority bestowed [under § 105(a)] may be invoked only if, and to the extent that, the equitable remedy dispensed by the court is necessary to preserve an identifiable right conferred elsewhere in the Bankruptcy Code." *Id.* at 314, citing *Jamo v. Katahdin*

*Fed. Credit Union (In re Jamo)*, 283 F.3d 392, 403 (1st Cir.2002).

[T]he Bankruptcy Code and the Federal Rules of Bankruptcy Procedure set forth the tools that the debtor may employ in [obtaining a confirmed Chapter 11 plan] and correspondingly the rights of creditors in deciding whether to agree to or contest such a plan. To restrict a creditor in how it addresses the treatment of its claims which will be subject of a plan, would not be "to carry out the provisions of [the Bankruptcy Code]" but the exact opposite by depriving that creditor of opportunities afforded it by the Bankruptcy Code.

*Id.* at 315. The court in *1900 M Restaurant* was clear that § 105(a) may be invoked only to implement specific provisions of the Code. Requiring the IRS to deal with its claims through the offer in compromise process—outside of bankruptcy—subverts rather than furthers the provisions of the Code. *Id.* at 313–16.

The court in *In re Uzialko*, echoing the opinion of *1900 M Restaurant*, applied the same reasoning to a Chapter 13 case and concluded that it had no "authority under § 105(a) to compel the IRS to negotiate outside of the plan confirmation process." *In re Uzialko*, 339 B.R. 579, 587 (Bankr. E.D.Pa.2006).

■■■ Having considered the reasoning of *Macher* and its progeny as well as the competing rationale of *1900 M Restaurant*, this Court finds the application of § 105 as articulated in *1900 M Restaurant* to be more sound. Though § 105 confers broad equitable powers upon the bankruptcy court, those powers are not without limit. *In re Foremost Mfg. Co.*, 137 F.3d 919, 924 (6th Cir.1998). The Supreme Court tells us that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Wor-*

*thington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *see also Rice v. United States (In re Rice),* 78 F.3d 1144, 1151 (6th Cir.1996). An offer in compromise is a proposal from a taxpayer to the IRS made in an effort to reduce that taxpayer's liability. The offer in compromise process is authorized by 26 U.S.C. § 7122, administered by the IRS, and exists wholly outside of and apart from the Bankruptcy Code. Compelling the IRS, a creditor in bankruptcy, to address its claims against the Debtors in a non-bankruptcy process cannot be seen as "necessary or appropriate to carry out the provisions of [Title 11]."

## IV. Policy Considerations

From a policy standpoint, the Court is compelled to the same conclusion: the Debtors chose to seek relief under the Bankruptcy Code; as such they are bound by the Code's parameters. Additionally, it would be unfair and burdensome to compel the IRS to address its claims in two separate forums, which could also result in conflicting or inconsistent outcomes. *See* Internal Revenue Manual 5.9.4.9(1) (2004).

The Bankruptcy Code provides a statutory framework for balancing the competing interests of debtors and creditors, including specific provisions dealing with tax claims like those of the IRS at issue in the present case. For example, under 11 U.S.C. § 1322(a)(2), "[t]he plan shall provide for the full payment ... of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim[.]" The Code thus provides the Chapter 13 debtor two options when dealing with a priority claim: 1) pay the claim in full, or 2) negotiate with the claimant in hopes of achieving compromise. Such compromise might involve agreement by the claim holder to accept a lesser amount than owed, or it might consist of an arrangement by which the obligation is partially repaid through the plan, leaving the balance to be addressed post-discharge.[3] Admittedly, the holder of a priority claim enjoys substantial leverage in whatever negotiations result, but this was specifically contemplated when providing for the treatment of priority claims and is no different from the superior status and collection rights that IRS enjoys outside of the bankruptcy arena.

■ Having sought relief under Chapter 13 of the Bankruptcy Code, Debtors should expect to proceed with their case under the provisions of that Code. They suffer no unfair prejudice when remedies otherwise available to them outside of bankruptcy—like the offer in compromise—are not available to them within bankruptcy. Whatever concession Debtors seek from the IRS regarding their tax liabilities must be achieved through negotiation and compromise within the bankruptcy context.

## V. Conclusion

For the reasons discussed above, this Court finds no authority under either § 525 or § 105 to order the IRS to process and consider the Debtors' offer in compromise and must deny the Debtors' Motion.

The Court will enter a separate order consistent with the foregoing.

---

**3.** It should be noted that IRS policy only prevents consideration of an offer in compromise from taxpayers currently in bankruptcy. Once the Debtors' Chapter 13 case is closed following completion of the plan or if the case is dismissed, Debtors are free to resubmit an offer in compromise regarding whatever tax liabilities survive.