**UNITED STATES of America et al., Petitioners,**

v.

**GARDEN STATE NATIONAL BANK, Palisades S & L Ass'n, Citizens First Nat'l Bank, etc., First Jersey S & L Ass'n, Respondents,**

v.

**Ben SHAFER and Boot Strap, Ltd., Intervenors.**

**Nos. Civ. 78–2415 to Civ. 78–2418.**

United States District Court, D. New Jersey.

Jan. 16, 1979.

298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), as well as consideration of *U. S. v. McCarthy*, 514 F.2d 368 (CA3, 1975) and *U. S. v. Genser*, 582 F.2d 292 (CA3, 1978) (revised opinion replacing the one published in the advance sheets, see Editor's Note; 572 F.2d 406), as well as various statutes and regulations.

As the result of changes made by Congress to the Internal Revenue Code in 1976, IRS must give a taxpayer notice of the issuance of specified kinds of summons (subpoena) to third parties, the taxpayer is given power to direct non-compliance and is given the right to intervene in ensuing enforcement proceedings.

These 4 cases arise under the new provisions. Summonses were issued, notice was given, taxpayer directed non-compliance, enforcement proceedings were begun, and taxpayer intervened. None of the pertinent reported cases involved application of the 1976 Code provisions. These cases do.

A combined hearing was held, evidence taken and argument presented. Under *McCarthy* and *Genser*, it is the court's view that the prudent course is to take testimony which it has done. The disposition thereon follows.

*La Salle* holds that IRS does not lose authority to use the administrative summons, and seek court orders to enforce such a summons, until it has referred a tax matter to the Department of Justice for possible criminal prosecution.

All members of the court were unanimous on that point.

The rationale is that since IRS has functions to assess and collect civil fraud penalties, in addition to taxes and interest, the fact of assignment of a special agent of the Criminal Investigation Division (formerly the Intelligence Division), to take charge of an investigation along with a revenue agent, cannot be taken, of itself, as establishing that the civil summons is being used "solely" for criminal prosecution purposes.

The decision also holds, with all members of the court in agreement, that the personal

Robert J. Del Tufo, U. S. Atty. by Eric L. Chase, Asst. U. S. Atty., Newark, N. J., for United States.

Louis Bender and Sandor Frankel, New York City, Cole, Berman & Belsky, Paterson, N. J., for intervenors.

No appearance for respondents.

BIUNNO, District Judge.

## MEMORANDUM

This group of cases involves application of *U. S. v. La Salle Nat'l Bank*, 437 U.S.

motive of the special agent in a case is not relevant to the issue of misuse of the judicial process.

The majority and minority diverge on the issue whether a taxpayer may challenge judicial enforcement of a civil summons when it is issued before institutional referral to the Department of Justice. The minority would not allow the challenge. The majority rules that such a challenge can be made, and will be sustained if a showing of institutional bad faith is made by taxpayer, even though there has been no referral. The burden is on taxpayer and is described as a heavy one.

The majority does not attempt to catalog a closed list of instances of institutional bad faith; it gives some examples. One example is when referral is delayed so that IRS may use civil process to gather evidence for a criminal prosecution. Another example is when the civil summons is used for harassment of the taxpayer.

The court's unanimous selection of referral to the Department of Justice as the event at which the intertwined civil and criminal aspects diverge is grounded on the Congressional scheme which vests the Secretary of the Treasury with the sole authority to compromise both the civil and criminal aspects at any point before referral, and in the Attorney General after referral.[1] This view is also based on 1976 figures indicating that fewer than 25% of all fraud investigations resulted in referrals, and the implication that the rest were resolved by compromise.[2]

The testimonial record at the hearing indicates that the *La Salle* court was either misinformed or misled in its assumptions and analysis. That testimony is that once a Special Agent of CID is assigned to an investigation, IRS does not institutionally engage in any process of negotiation looking to a possible compromise of both the civil and criminal aspects, even if taxpayer voluntarily requests conferences to that end. Instead, the policy or practice appears to be that, after a Special Agent of CID is assigned, taxpayer will at most be allowed to come in, and will be listened to, but no negotiations will be engaged in until after the investigation has been completed, and the internal reviews that follow have resulted in a decision (arrived at unilaterally by IRS and not by negotiation) not to refer to the Department of Justice. The consequence of this is that compromises can only be negotiated in cases where IRS has decided not to refer.

This consequence reflects a failure or refusal of IRS, in the institutional sense, to exercise the statutory authority to compromise both the civil and criminal aspects of a tax case. While the grant of authority to compromise does not command that a

---

1. 26 U.S.C. § 7122(a) reads:

   "(a) The Secretary or his delegate may compromise any civil or criminal case arising under the internal revenue code prior to reference to the Department of Justice for prosecution or defense; and the Attorney General or his delegate may compromise any such case after reference to the Department of Justice for prosecution or defense."

2. Whether the case status is before or after referral, the *La Salle* court rationally expected that there would be interagency cooperation between IRS and the Department of Justice in the efficient effort to resolve by compromise both the civil and criminal aspects of a tax case. Thus, in the negotiation stage, an agreement might be reached to settle the tax, interest and penalty (civil) and to plead guilty to an information under an agreement pursuant to Rule 11, F.R.Crim.P. (criminal). Once the agreements were made, a formal referral would probably be needed for Department of Justice to present a waiver of indictment and the Rule 11 agreement, for approval, along with a civil complaint and a consent judgment (probably with provisions to stay execution so long as agreed installments were paid). Or, the agreement may be not to prosecute at all.

   The same expectation of interagency cooperation would prevail where there has been a referral to Department of Justice. Here again, a Rule 11 agreement would be negotiated with the U. S. Attorney, who would need participation by IRS to develop the figures to compromise the civil claim, including penalties.

   The particular language of the *La Salle court* was:

   "Interagency cooperation on the calculation of the civil liability is then to be expected and probably encourages efficient settlement of the dispute." 437 U.S. at 312, 98 S.Ct. at 2365.

compromise agreement be reached, it does imply a mandate to negotiate, to make the effort, to explore the potential for compromise before deciding unilaterally whether or not to refer. It is also contrary to the evident impression of the *La Salle* court that IRS does in fact, institutionally, negotiate compromise in fraud cases that might otherwise be referred.[3]

If the testimonial record were the entire record, the court would rule that the taxpayer has successfully shown institutional bad faith in that the civil summons was being used solely as a means for deciding whether or not to refer for criminal prosecution, meanwhile gathering evidence in support.

That ruling is buttressed by the evidence that the investigation here began with a reference to a Special Agent of CID alone, acting without a revenue agent, and that many months passed before a revenue agent was assigned. Not only that, but many more months passed after the civil summonses were issued, before judicial enforcement was sought. This delay was attributed to referrals up to and down from the regional level for clearance to proceed.

If IRS were institutionally interested in both the civil and criminal aspects, the need for such an intermediate referral and response is entirely obscure. Its use implies a method for preliminary evaluation at the regional level of the question whether the

evidence in hand (before civil summons) is strong enough to warrant referral to the Department of Justice. If so judged, the formal recommendations would follow, culminating in referral. If not, then authorization to proceed with judicial enforcement of civil summons would follow in an effort to strengthen the evidence in hand.

Such a course of action and policy would amount to a delay designed to misuse the enforcement power of the court to secure evidence solely for the criminal referral, a kind of delay the *La Salle* majority said it would not countenance.

The legal record contradicts the testimonial record. It shows the entry of administrative orders by which the Secretary has delegated to various delegates the authority to compromise within the authority of the Act. The level of delegation evidently depends on whether the apparent liability is more or less than $100,000., as well as on the kind of tax involved.

The published regulations also reflect a procedure for conference at the request of taxpayer, or without such request when a designated official judges it in the interest of the government to invite a conference.

The conduct of a conference does not assure that compromise can be agreed upon; but it is obvious that there cannot be a compromise unless it is preceded by conference. The achievement of compromise

---

**3.** The trial court regularly observes the same problem in reverse, i. e., where there has been referral and indictment, followed by a Rule 11 agreement. In such cases the experience invariably has been that, at sentence, when the court inquires whether the civil aspects have been resolved, defendant/taxpayer replies that no one will discuss the civil aspects until after sentence has been imposed.

This reply frustrates the sentencing process since resolution of the civil aspect is an important factor to consider at sentence time, just as it is in any criminal case with property or money involved, i. e., the question of restitution. See, e. g., the quotation at sentence time in a criminal tax case, in a proceeding before the late Robert Shaw, U. S. District Judge, in *U. S. v. Whelan and Flaherty,* 456 F.Supp. 744 at 751 (D.N.J., 1978).

Thus, despite the vesting of complete authority in Department of Justice to compromise

both civil and criminal aspects of a tax case after referral, the practice appears to be that only a Rule 11 agreement will be negotiated for the criminal aspect, even though the Internal Revenue Code gives authority to negotiate the civil aspect as well with the Department of Justice. In practice, what evidently follows is a re-referral back to IRS, as evidenced by the flow of *ex parte* orders to allow Grand Jury materials to be released, under Rule 6(e), F.R. Crim.P. to agents of IRS for the prosecution of a civil suit.

In sum, these practices appear to frustrate the intention of Congress that a taxpayer who faces civil claims and criminal charges will have some single agency to deal with in an effort to negotiate a compromise. The consequence is that some number of tax matters that *could be closed by compromise become* "criminal cases" or "civil cases", and more likely, both.

necessarily requires participation by both IRS and taxpayer, even though no final agreement can be expected to be arrived at, realistically, until the investigation is completed.

One possibility is that the law, the delegation orders and the regulations say one thing, while in fact IRS does something else.

Another possibility is that institutional bad faith in this context cannot be tested, evaluated and adjudicated except in a setting where taxpayer has requested a conference for the purpose of negotiating with an eye to reaching a compromise if one can be reached, and has been met with no more than a willingness to listen to what taxpayer has to say but without participation in good faith negotiations in an effort to reach compromise if it can be reached.

■ Since taxpayer has stated on the hearing record that no request for conference was made, the court finds that the problems which concern it are abstract, and concludes that taxpayer has not met the burden established by *La Salle*.

The case might well be different had there been a request for compromise met only by pro forma efforts by way of lip service to the negotiation process. Had there been such a showing, the court might be inclined to review in camera so much of the investigation file as physically segregates most of the internal memoranda. Without that showing, the court does not consider that such an in camera inspection would be fruitful.

The enforcement orders will be granted. Separate orders, one for each case, should be submitted promptly, accompanied by a statement of the dates for appearance requested for the witnesses.

In the event taxpayer wishes to appeal, the court treats the matter as though a request for stay pending appeal had been made. Such a stay is denied. Taxpayer is to submit promptly a separate order, one for each case, denying a stay pending appeal, but with a provision directing IRS to keep separate and segregated files of the information and evidence obtained in compliance with the enforcement orders, so that such materials can be identified in accordance with any mandate on reversal in accordance with its directions.