"PSEUDONYM TAXPAYER", Plaintiff,

v.

William MILLER, Secretary of the Treasury et als., Defendants.

Civ. 80–653.

United States District Court, D. New Jersey.

April 1, 1980.

Zuckerman, Aronson & Horn, Newark, N. J., for plaintiff; Kostelanetz & Ritholz by Robert S. Fink and Stuart E. Abrams, New York City, of counsel, for plaintiff.

Robert J. Del Tufo, U. S. Atty., by Anne C. Singer, Asst. U. S. Atty., Newark, N. J., for defendants.

## OPINION

BIUNNO, District Judge.

Taxpayer filed a complaint seeking to restrain I.R.S. from making a recommendation to refer his tax case (for the years 1974 through 1977) to the Attorney General for prosecution as a criminal case. See the discussion in *U. S. v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978) for the statutory basis underlying this inter–agency procedure. See, also, *U. S. v. Garden State National Bank*, 465 F.Supp. 437 (D.N.J.1979), aff'd 607 F.2d 61 (CA 3, 1979); and *U. S. v. First*

*National State Bank of N. J.*, 469 F.Supp. 612 (D.N.J., 1979), aff'd and rev'd 616 F.2d 668 (CA 3, 1980).

The Garden State and First National State cases were civil actions to enforce an administrative I.R.S. summons (subpoena) to a third–party recordkeeper, under the provisions of the Tax Reform Act of 1976, i. e., under a law not involved in the *LaSalle* case. What was said by this court in *Garden State* and *First National State* was by way of hope or expectation that since I.R.S. has complete jurisdiction to compromise and settle all aspects of a "tax case", both civil and criminal, before referral to the Attorney General (as noted in *LaSalle*), the comments might induce both taxpayers and I.R.S. to undertake good faith negotiations for resolution of any disagreement without generating avoidable litigation.

Whether those comments have had a constructive effect or not the court cannot say. It has observed a sharp decline in the number of I.R.S. enforcement actions, but this may be due to the lack of success of taxpayers challenging them as much or more than to the court's comments.

In any event, no such issue is involved here. There is no administrative summons sought to be enforced against a third–party recordkeeper. Instead, the tax case has been processed to the point where the I.R.S. is contemplating a recommendation to refer the case to the Attorney General. It is this step which taxpayer seeks to enjoin.

The order to show cause was presented late in the afternoon, and although defendants had counsel present, the papers had been received too late in the day to find out where the matter stood. The United States represented that, if a recommendation had not gone out from the District office, none would go out until the order to show cause had been heard. This obviated the need for any temporary restraint.

At the hearing of March 19, 1980, the matter was carried to the afternoon of March 21, 1980. The United States filed a responding affidavit to oppose the preliminary injunction sought, and also in support of its own motion to dismiss under F.R.

Civ.P. 12(b)(1) or (6). Since this involved consideration of matters outside the pleadings, it could only be considered by treating the motion as one for summary judgment under F.R.Civ.P. 56. Taxpayer agreed that, for that purpose, the court could consider the "Memorandum of Formal Conference" dated February 26, 1980, attached to the affidavit of Edward F. McCormick, as setting out accurately the substance of what occurred at the conference. Opportunity to respond on the law was provided, and disposition was reserved. Further submissions have been made and the matter is ripe for decision.

Taxpayer argues that I.R.S. has failed, and should be compelled, to comply with the provisions of 26 C.F.R. § 601.-107(b)(2). It appears that taxpayer was aware that an investigation was being conducted in respect to his income taxes, and requested a conference under the regulation. At the time of the request, it appears that the investigation had not reached a stage where the probability of a recommendation to refer for criminal prosecution was known. In due course, Taxpayer was so informed, a conference was scheduled and held February 26, 1980, with Taxpayer's attorney present, but not Taxpayer himself.

The attorney was informed that the Criminal Investigation Division (C.I.D.) intended to forward the case to District Counsel with a recommendation for prosecution in violation of I.R.C. § 7201 and 7206(1), for the years 1974 through 1977. He was told that the case was based on specific items of omitted income, and that the tax and penalties (50%) aggregated $20,578.

The attorney then asked for a year to year breakdown, and this information was provided, with a further subdivision between tax and 50% civil fraud penalty. The attorney then claimed that taxpayer was entitled to more information: the alleged criminal features, the fraudulent features of the case, and the specific items not reported. He was told that the criminal features consisted of unreported interest and dividend income for all 4 years, and unre-ported patients' receipts in 1974 and 1975 only.

It is argued that this information does not satisfy the regulation, and the United States responds that it does. What the regulation speaks of, at a conference, is that:

"... the I.R.S. representative will inform the taxpayer by general oral statement of the alleged fraudulent features of the case, to the extent consistent with protecting the Government's interests, and, at the same time, making available to the taxpayer sufficient facts and figures to acquaint him with the basis, nature and other essential elements of the proposed criminal charges against him."

Insofar as Taxpayer seeks a preliminary injunction, the court finds that he has failed to show a reasonable likelihood of success on the merits. Nothing in the regulation suggests that the conference is intended to provide pre–referral discovery in what may or may not become a criminal case. There can be no "criminal case" until after referral, and then only if a Grand Jury returns an indictment. In that event, an accused taxpayer would not be entitled to have discovery with the detail sought here.

It is not necessary to decide whether the regulation is mandatory or not. In this case, the information provided appears to have been sufficient. Taxpayer is responsible for keeping records of dividend, interest and patient fee income. Most payors do file and supply Form 1099 to report interest and dividends paid. Taxpayer can easily check the amounts reported as well as sources by examining his Form 1040 and comparing it to his 1099's and other records. The same is true of patient income.

The dividend interest income said to have been unreported in 1976 and 1977 is of the order of $1,000 a year. At an assumed current yield of 8%, that level implies investments of about $12,500., hardly an item to be innocently overlooked. The difference between the years 1974, 1975 and the years 1976, 1977 is of the order of $4,500 to $5,000., evidently representing unreported

patient fees. All of these facts, taken together, are sufficient to inform a taxpayer's attorney well enough to enable him to consult with his client, under the protection of the attorney/client privilege, to ascertain whether the results of the investigation have substance.

While the regulation does not explicitly say so, its obvious purpose is to provide a tool for sifting cases, and for the negotiation of compromises as authorized by the statute, as pointed out in *LaSalle*.

For those purposes, what was disclosed was sufficient, keeping in mind that the disclosure must be consistent with protecting the Government's (public) interests.[1]

Given what was disclosed here, a taxpayer who did not knowingly file a false return, or who did not file a fraudulent return would have at least either offered to show that the data was in error, or that if essentially correct, that the omissions were the result of innocent mistake and lacking in criminal intent. The latter position inevitably implies a readiness to pay whatever may be due on the unreported income.

The income tax system is grounded on self–assessment on an honest basis. The tax laws are sufficiently complex to generate honest dispute about the treatment of one or another item entering into the calculation. This is not that kind of case, because it involves failure to report income in three categories, the treatment of which is hardly subject to dispute.

■ Aside from the preliminary injunction aspect, the court is satisfied that it is not a judicial function to poke about in the discretionary operations of an agency in the Executive Branch, in a way that would involve overseeing. There are well–established statutes and regulations, and no indication that any constitutional or statutory right is being invaded. I.R.S. has primary jurisdiction to decide whether to recommend and whether to refer for prosecution. This is strictly a discretionary Executive Branch function in which the judiciary should not interfere. The court is satisfied that it has no jurisdiction to grant any relief.

If it does have jurisdiction, the undisputed summary of the conference establishes that there is no genuine issue of fact on the question whether I.R.S. complied with the regulation. It clearly did.

Order will accordingly be entered (a) denying a preliminary injunction; (b) dismissing for lack of jurisdiction and, in the alternative, (c) granting summary judgment to defendants.

It is noted for the record that in view of the unusual fashion in which the matter arose, no order to show cause was in fact signed and filed until the matter had been fully heard. The order is accordingly entered nunc pro tunc, with suitable modifications. Also, plaintiff's name is entered as a pseudonym to protect his privacy interests.

---

1. The court sees no need to discuss the very recent unreported cases at the district level relied on by taxpayer. With due respect to the trial judge who decided *Continental Electric Co. v. Kurtz*, 44 AFTR 2d 79–5269 (N.D.Ala., 1979) and *Trapp v. Baptist*, 43 AFTR 2d 79–5094 (N.D.Ala., 1979), this court is satisfied that the conference procedure is not designed as a due process step in a matter leading to an "adjudication"; and that it is not a discovery tool in the traditional sense. It is a means for sifting and sorting, and obviously this may well involve an evaluation of taxpayer's demeanor and posture at the conference.

Nor does this case involve subjects like the "value" of land about which there can be many different views, as in *Hatchell v. U. S.*, 43 AFTR 2d 79–1292 (S.D.Miss., 1979). As observed above, the items here are items taxpayer can check from his own 1099's and patient fee records to see whether the allegedly unreported amounts were in fact received and not reported.