**In re 1900 M RESTAURANT ASSOCIATES, INC., Debtor.**

**1900 M Restaurant Associates, Inc., Plaintiff,**

**v.**

**United States of America, Defendant.**

**Bankruptcy No. 03–00717. Adversary No. 04–10059.**

United States Bankruptcy Court, District of Columbia.

Jan. 24, 2005.

**304**

Janet M. Nesse, Marc E. Albert, David I. Gold, Stinson, Morrison, Hecker LLP, Washington, D.C., for plaintiff.

David M. Katinsky, Trial Attorney, Tax Division, U.S. Department of Justice, for defendant.

### DECISION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

S. MARTIN TEEL, JR., Bankruptcy Judge.

The plaintiff, 1900 M Restaurant Associates, Inc., is the debtor in the case, pending under chapter 11 of the Bankruptcy Code (11 U.S.C.), to which this adversary proceeding relates. Its complaint seeks an order compelling the United States of America to have its Internal Revenue Service ("IRS") consider under § 7122(a) of the Internal Revenue Code (26 U.S.C.) an offer-in-compromise submitted by the debtor to the IRS on IRS Form 656 in January 2004, after the commencement of the bankruptcy case, but before the filing of any proposed chapter 11 plan. (The offer-in-compromise proposed a schedule of payments to the IRS in satisfaction of its claims for less than the full amount of those claims.) The complaint also seeks a declaration that the IRS's policy to refuse to consider offers-in-compromise submitted on Form 656 during the pendency of a case under chapter 11 of the Bankruptcy Code, and the IRS's refusal to consider the January 2004 offer-in-compromise based on that policy, constitute discrimination in violation of 11 U.S.C. § 525(a). Upon consideration of the parties' cross-motions for summary judgment, the court will dismiss the proceeding.

### I

Section 7122(a) of the Internal Revenue Code provides:

(a) AUTHORIZATION.—The Secretary may compromise any civil or criminal case arising under the internal revenue law prior to reference to the Department of Justice for prosecution or defense; and the Attorney General or his delegate may compromise any such case after reference to the Department of Justice for prosecution or defense.

An offer to compromise a tax liability pursuant to § 7122 "must be submitted according to the procedures, and in the form and manner, prescribed by the Secretary" (26 C.F.R. § 301.7122–1(d)(1)), and "[t]he IRS may ... return an offer to compromise a tax liability if it determines that the offer was submitted solely to delay collection **or was otherwise nonprocessable**" (26 C.F.R. § 301.7122–1(d)(2) (emphasis added)). The procedural details regarding offers-in-compromise have been left to Rev. Proc. 2003–71, 2003 WL 21982210. Generally, offers-in-compromise may be submitted on IRS Form 656, the form the debtor employed here. However, the Revenue Procedure directs IRS personnel to treat any such offer-in-compromise as "nonprocessable" if a bankruptcy case of the taxpayer is pending. As set forth in IRS Chief Counsel Notice 2004–25 (July 12, 2004), the IRS "considers payment pro-

posals submitted by taxpayers in bankruptcy through the plan confirmation process." Instead of employing what the Chief Counsel Notice refers to as "the bulk processing operations established for the high volume of administrative offers-in-compromise received by the Service," the Notice indicates that the IRS vests in employees of the IRS's office which handles insolvency matters the responsibility "to consider payment proposals, usually in the form of a proposed plan, regarding the payment of the Service's claims in a bankruptcy case." The Notice lays out several factors for IRS insolvency employees to consider in making a discretionary determination regarding whether to accept a plan that provides less than what is statutorily required to be paid under the Bankruptcy Code. Among the criteria which the Notice indicates are to be employed is "whether creditors with the same priority, such as state taxing authorities, are accepting less than full payment of their claims."

In compliance with the Revenue Procedure, the IRS returned the debtor's January 2004 Form 656 offer-in-compromise as nonprocessable. Subsequently the debtor filed a proposed amended plan of reorganization which assumes that its offer-in-compromise will be processed and which incorporates alternative terms in the event that the offer-in-compromise is not accepted. The IRS, through the Department of Justice, has objected to confirmation of the debtor's proposed plan.

## II

■ In seeking to compel processing of its offer-in-compromise, the debtor relies on 11 U.S.C. § 525(a) which provides in relevant part that:

a governmental unit may not deny, revoke, suspend, or refuse to renew a **license, permit, charter, franchise, or other similar grant** to, [or] . . . discriminate with respect to such a grant against . . . a person that is . . . a debtor under this title . . . solely because such . . . debtor is . . . a debtor under this title . . . .

[Emphasis added.] Based on *Macher v. United States (In re Macher)*, 2003 WL 23169807 (Bankr.W.D.Va.), *aff'd sub nom. United States v. Macher (In re Macher)*, 303 B.R. 798 (W.D.Va.2003), and *Holmes v. United States (In re Holmes)*, 298 B.R. 477 (Bankr.M.D.Ga.2003), *aff'd sub nom. IRS v. Holmes*, 309 B.R. 824 (M.D.Ga. 2004), the court concludes that 11 U.S.C. § 525(a) does not apply to the IRS's refusal to consider an offer-in-compromise under § 7122 during the pendency of a bankruptcy case. *But see Mills v. United States (In re Mills)*, 240 B.R. 689 (Bankr. S.D.W.Va.1999); *Chapman v. United States (In re Chapman)*, 1999 WL 550793 (Bankr.S.D.W.Va.1999).

To elaborate, the debtor's asserted "right to submit an offer-in-compromise" on Form 656 is not a "license, permit, charter, or franchise" within the ordinary meaning of those words. Nor is it a "grant" within any of the ordinary meanings of that word as discussed in *Stoltz v. Brattleboro Hous. Auth. (In re Stoltz)*, 315 F.3d 80, 89–90 (2nd Cir.2002),[1] and certainly not a grant similar to a "license, permit, charter, [or] franchise" as required by § 525(a).

The government's compromise of tax claims, a modification of debt obligations, is similar to the governmental programs for extensions of credit which were held not to fall within the categories of § 525(a) in *Watts v. Pennsylvania Hous. Fin. Co.*

---

**1.** For the sake of brevity, the court incorporates by reference the *Stoltz* opinion's discussion of the ordinary meaning of the word "grant."

*(In re Watts)*, 876 F.2d 1090 (3d Cir.1989), and *Toth v. Michigan State Hous. Dev. Auth.*, 136 F.3d 477 (6th Cir.), *cert. denied*, 524 U.S. 954, 118 S.Ct. 2371, 141 L.Ed.2d 739 (1998). The debtor's reliance on *Stoltz* is misplaced because *Stoltz* involved revocation of a public housing lease, a clear property right, that qualified as a "grant" in the ordinary sense of that word.[2] Accordingly, the debtor is entitled to no relief under § 525(a).

## III

The debtor alternatively seeks an order under 11 U.S.C. § 105(a) compelling the IRS to consider its Form 656 offer-in-compromise. Section 105(a) provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." To the extent that the debtor is invoking the remedy of mandamus, the relief it seeks is inappropriate.

### A.

■ As noted in the legislative history to § 105(a), the statute:

> is similar in effect to the All Writs Statute, 28 U.S.C. 1651 .... The section is repeated here for the sake of continuity from current law and ease of reference, and to cover any powers traditionally exercised by a bankruptcy court that are not encompassed by the All Writs Statute.

H.R. Rep. 95–595, 95th Cong., 1st Sess., at 316–17 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5963, 6273–74.[3] To the extent the debtor seeks to compel performance of an alleged duty, the relief the debtor seeks is in the nature of mandamus. *See Georges v. Quinn*, 853 F.2d 994, 995 (1st Cir.1988); *United States v. Brock (In re Wingreen Co.)*, 412 F.2d 1048, 1051 (5th Cir.1969). The writ of mandamus is one of the writs that have traditionally been available under the All Writs Statute. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. ——, ——, 124 S.Ct. 2373, 2379, 159 L.Ed.2d 137 (2004). Accordingly, to the extent appropriate, mandamus may be granted under 11 U.S.C. § 105 as well.

Although there is also a specific mandamus statute applicable to officers and agents of the United States, 28 U.S.C. § 1361, that provision was enacted as part of the Mandamus and Venue Act of 1962 which was intended to make the use of the remedy more readily available by, for example, not limiting mandamus actions to the district in which the agency's head resided. *See Stafford v. Briggs*, 444 U.S. 527, 535, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980). Accordingly, decisions which deny mandamus on general mandamus principles under § 1361 are equally applicable to requests for relief in the nature of mandamus under the All Writs Statute or its bankruptcy analog, 11 U.S.C. § 105.

■ As observed in *Consolidated Edison Co. of New York, Inc. v. Ashcroft*, 286 F.3d 600, 605 (D.C.Cir.), *cert. denied*, 537

---

**2.** However, it is debatable (as discussed in the dissenting opinion) whether the lease was a grant similar to a "license, permit, charter, [or] franchise" as required by § 525(a). *Stoltz*, 315 F.3d at 95–96 (dissenting opinion). Moreover, it is debatable whether a public housing authority's exercise of its *in rem* rights as a creditor to evict the debtor under a public housing lease, instead of denying the debtor the right to obtain a public housing lease, comes within § 525(a). *See In re Va-*lentin, 309 B.R. 715 (Bankr.E.D.Pa.2004); *In re Bacon*, 212 B.R. 66 (Bankr.E.D.Pa.1997).

**3.** 28 U.S.C. § 1651(a) provides:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

U.S. 1029, 123 S.Ct. 557, 154 L.Ed.2d 443 (2002):

"[A] 'drastic' remedy, 'to be invoked only in extraordinary situations,'" *In re Papandreou,* 139 F.3d 247, 249 (D.C.Cir. 1998) (*quoting Kerr v. U.S. Dist. Court,* 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976)), mandamus is inappropriate except where a public official has violated a "ministerial" duty. Such a duty must be "so plainly prescribed as to be free from doubt and equivalent to a positive command.... [W]here the duty is not thus plainly prescribed, but depends on a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus." *Wilbur v. United States,* 281 U.S. 206, 218–19, 50 S.Ct. 320, 324–25, 74 L.Ed. 809 (1930).

And as observed in *Power v. Barnhart,* 292 F.3d 781, 784 (D.C.Cir.2002):

The "remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances." Mandamus is available only if: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." The party seeking mandamus "has the burden of showing that 'its right to issuance of the writ is clear and indisputable.'"

(Citations omitted.) *See also Heckler v. Ringer,* 466 U.S. 602, 616, 104 S.Ct. 2013,

80 L.Ed.2d 622 (1984) (clear nondiscretionary duty required).

B.

█ The IRS owes no clear duty to the debtor under § 7122 to process an offer-in-compromise submitted on Form 656 which its Revenue Procedure has specifically treated as nonprocessable when a bankruptcy case of the taxpayer is pending. Section 7122 does not command the Secretary to consider an offer-in-compromise; it only provides that the Secretary or the Department of Justice, as the case may be, **may** compromise a civil tax liability. The discretion vested in the Secretary to compromise carries with it the discretion not to exercise the Secretary's discretion. *See United States v. Smith, Barney, Harris, Upham and Co.,* 45 AFTR2d 80–1105, 80–1 USTC ¶ 9108, 1979 WL 1521 (S.D.N.Y. 1979) ("[T]he decision whether to discuss settlement and whether to issue a summons is a discretionary one that cannot be compelled by the court." (Citation omitted.)); *Carroll v. IRS,* 14 AFTR2d 5564, 64–2 USTC ¶ 9687 (E.D.N.Y.1964) ("The decision to accept or reject a compromise offer by its nature involves the discretion of administrative authority and can not be compelled by any action for a mandatory injunction."). *See also Horton Homes, Inc. v. United States,* 936 F.2d 548, 554 (11th Cir.1991) (except in a case of invidious discrimination which violates the Constitution, "**judicial review of IRS's** exercise or **nonexercise of discretion** under section 6404(e)(1) [providing that the Secretary may abate an assessment of interest] **is not available**" (emphasis added));[4]

---

4. *See also Carlson v. United States (In re Carlson),* 126 F.3d 915, 920 (7th Cir.1997), *cert. denied,* 523 U.S. 1060, 118 S.Ct. 1388, 140 L.Ed.2d 647 (1998) (holding that an abatement of interest under § 6404(e)(1) is within the sole authority of the Secretary of the Treasury, "and as such it is beyond the scope of judicial review" (citations omitted)). Al-

though *Horton Homes* remains good law for the general principle that, unless the statute provides otherwise, the Secretary's nonexercise of discretion is not subject to judicial review, it has been superseded by a 1996 amendment to the statute. Review by the Tax Court of the Secretary's decision not to abate interest is now available under 26 U.S.C.

*United States v. Williams*, 514 U.S. 527, 537 n. 9, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995) ("§ 6325(b)(3) [Secretary's discretionary authority to issue a certificate of discharge] presents no question of administrative exhaustion as a prelude to judicial review, for that 'remedy' lies entirely within the Government's discretion."); *E.J. Friedman Co. v. United States*, 6 F.3d 1355, 1358, 1359 (9th Cir.1993) (decision whether to discharge lien as valueless is within Secretary's discretion and accordingly unreviewable under Administrative Procedure Act and a bar to quieting title in a 28 U.S.C. § 2410 action on the basis of valuelessness).

Although *Mills*, 240 B.R. at 696, held that consideration of offers-in-compromise is a non-discretionary duty, it relied on a subsequently discredited statement, purely unnecessary dictum, in *United States v. Garden State National Bank*, 465 F.Supp. 437 (D.N.J.), *aff'd*, 607 F.2d 61 (3d Cir. 1979). *Garden State* was a summons enforcement proceeding in which the district court addressed the issue of good faith regarding issuance of the summonses by the IRS during an ongoing criminal investigation, and testimony that if a taxpayer requests a settlement conference, the taxpayer:

> will at most be allowed to come in, and will be listened to, but no negotiations will be engaged in until after the investigation has been completed, and the internal reviews that follow have resulted in a decision (arrived at unilaterally by IRS and not by negotiation) not to refer [the case] to the Department of Justice [for criminal prosecution].

*Garden State*, 465 F.Supp. at 439. It was in that context that the court stated that "[w]hile the grant of authority to compromise does not command that a compromise agreement be reached, it does imply a mandate to negotiate, to make the effort, to explore the potential for compromise before deciding unilaterally whether or not to refer [the case to the Department of Justice for criminal prosecution]." *Garden State*, 465 F.Supp. at 439–40. As the district court itself recognized, the statement was unnecessary to its decision because the taxpayer had made no offer. On appeal, the court of appeals declined to adopt this dictum, affirming on different grounds, and expressly held that "the refusal of the Service to enter into compromise negotiations, standing alone, does not amount to 'bad faith.'" *Garden State*, 607 F.2d at 73.[5] The court of appeals thus implicitly recognized that there are circumstances in which the Secretary ought to be able to exercise discretion not to consider an offer-in-compromise. Subsequently, the court in *Smith, Barney*, 45 AFTR2d 80–1105, 80–1 USTC ¶ 9108, criticized *Garden State* as "logically, practically, and legally unsound,"[6] and recognized

---

§ 6404(h). *See Miller v. Commissioner of Internal Revenue*, 310 F.3d 640 (9th Cir.2002). Some courts hold that in light of that amendment, the Secretary's decision is also reviewable in a refund suit in the district court. *See Beall v. United States*, 336 F.3d 419 (5th Cir. 2003).

**5.** *See also Garden State*, 607 F.2d at 66 n. 7 ("We reject any suggestion that enforcement may be granted or denied wholly upon the basis of a taxpayer's request or lack of request for a compromise conference, or wholly upon

the availability or unavailability of a compromise negotiation conducted with I.R.S.").

**6.** Indeed, the same district judge who wrote the decision in *Garden State* appears to have retreated from his dictum because he later observed that what he said in *Garden State* "was said by way of hope or expectation that ... the comments might induce both taxpayers and I.R.S. to undertake good faith negotiations for resolution of any disagreement ...." *"Pseudonym Taxpayer" v. Miller*, 497 F.Supp. 78, 79 (D.N.J.1980).

the nonreviewable discretionary nature of the Secretary's settlement authority. The *Mills* decision fails to acknowledge *Smith, Barney*, and is otherwise unpersuasive in placing reliance on the district court's misguided dictum in *Garden State*.

■ In exercising the statutory discretion of § 7122(a), the Secretary is generally free to specify what types of offers will be processed. *See Boulez v. Commissioner*, 810 F.2d 209 (D.C.Cir.), *cert. denied*, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987) (Secretary could refuse by regulation to consider oral offers-in-compromise). 26 U.S.C. § 7122(c)(1) requires the Secretary to prescribe guidelines for IRS personnel "to determine whether an off-in-compromise is adequate and should be accepted to resolve a dispute." The Secretary has viewed the issue of adequacy as including the issue of whether an offer-in-compromise is processible: an offer to compromise a tax liability pursuant to § 7122 "must be submitted according to the procedures, and in the form and manner, prescribed by the Secretary" (26 C.F.R. § 301.7122–1(d)(1)), and "[t]he IRS may ... return an offer to compromise a tax liability if it determines that the offer was submitted solely to delay collection **or was otherwise nonprocessable**" (26

C.F.R. § 301.7122–1(d)(2) (emphasis added)).

The details of what offers-in-compromise are nonprocessable has been left to Rev. Proc. 2003–71, § 5 ("When an Offer Becomes Pending and Return of Offers"), 2003–36 I.R.B. 517, and it makes clear that an offer-in-compromise is nonprocessable when a bankruptcy case is pending.[7]

The only statutory limitations on the Secretary's discretion under § 7122(a) arise implicitly from three parts of 26 U.S.C. § 7122(c):

- The first of these is the command of § 7122(c)(2)(B) that the Secretary's guidelines for determining whether an offer-in-compromise is adequate and should be accepted must, in effect, direct IRS personnel not blindly to apply standard allowances prescribed under the guidelines for basic living expenses.[8] This implicitly means that the Secretary has no discretion to treat an offer as nonprocessable solely because the offer proposes not to follow the guidelines' standard allowances for basic living expenses.

- The second is the command of § 7122(c)(3)(A) that IRS personnel "shall not reject an offer-in-compromise from a low-income taxpayer solely on

---

7. The Revenue Procedure's § 5 ("When an Offer Becomes Pending and Return of Offers") addresses what offers to compromise tax liabilities are nonprocessable. Section 5.01 of the Revenue Procedure provides that one of the minimum requirements making an offer-in-compromise processible is that "the taxpayer is not in bankruptcy." In turn, § 5.03 provides that an offer not meeting this or other minimum requirements is not processible.

8. To explain in greater detail, § 7122(c)(1) requires the Secretary to "prescribe guidelines for [IRS personnel] to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute." In

turn, § 7122(c)(2)(A) requires that "[i]n prescribing guidelines ..., the Secretary shall develop and publish schedules of national and local allowances designed to provide that taxpayers entering into a compromise have an adequate means to provide for basic living expenses." Then, § 7122(c)(2)(B) requires that the Secretary's guidelines must "provide that [IRS personnel] shall determine, on the basis of the facts and circumstances of each taxpayer, whether the use of the schedules published under subparagraph (A) is appropriate **and shall not use the schedules to the extent such use would result in the taxpayer not having adequate means to provide for basic living expenses.**" [Emphasis added.]

·the basis of the amount of the offer." This implicitly requires that the IRS not treat an offer-in-compromise as nonprocessable solely because it fails to propose payment of some minimum amount.

- Finally, § 7122(c)(3)(B) provides that in the case of an offer-in-compromise which relates only to issues of liability of the taxpayer, "(ii) the taxpayer shall not be required to provide a financial statement." Accordingly, such an offer-in-compromise could not be treated as nonprocessable solely because it lacked a financial statement.

Except for those implicit restrictions, however, the statute is silent regarding what offers the Secretary may treat as nonprocessable. Plainly the decision under the Revenue Procedure not to process an offer-in-compromise submitted when a taxpayer is in bankruptcy does not run afoul of those restrictions.

That administrative review and administrative appeal rights exist under § 7122(d) with respect to any rejection of a proposed offer-in-compromise does not alter this analysis. Under 26 C.F.R. § 301.7122–1(f)(5)(ii), a regulation which has the force of law, treating an offer as nonprocessable is not the same thing as rejecting a processible offer-in-compromise. The IRS was completely within the limits of its permissible discretion in refusing to process an offer-in-compromise that was presented in a vacuum without a chapter 11 plan having been filed.[9]

Although *Chavez v. United States,* 93 AFTR2d 2004–2386, 2004 WL 1124914 (W.D.Tex.2004), held that the IRS's decision to return an offer as nonprocessable was reviewable to determine whether it was an abuse of discretion, it did so under specific statutory authority, 26 U.S.C. § 6630(d)(1), which vested the district court with authority to review the IRS's decision to proceed with levy, including in that regard review of the administrative consideration of offers-in-compromise as a factor in deciding to proceed with levy. Section 6630 has not been invoked here (and will not likely become applicable while the bankruptcy case is pending because the automatic stay of 11 U.S.C. § 362(a) has barred the IRS from proceeding with enforcement of its tax claims by levy). With the only statutory provision that provides for judicial review of decisions regarding offers-in-compromise being inapplicable at this juncture, this court ought not review the IRS's discretionary decision to treat as nonprocessable the debtor's attempted offer-in-compromise. *Cf. Ballhaus v. I.R.S.,* 341 F.Supp.2d 1145 (D.Nev. 2004) (only Tax Court is vested with statutory authority to review Secretary's discretionary authority to abate interest); *Beall v. United States,* 336 F.3d 419, 427 n. 9 (5th Cir.2003) (even though district court may review Secretary's refusal to abate interest in a refund suit under 28 U.S.C. § 1346 and 26 U.S.C. § 7422, the Administrative Procedure Act, and implicitly, mandamus, are not appropriate vehicles for such review).

---

9. If the IRS accepts a debtor's proposed plan which proposes less than full payment of the IRS's claims, and the plan is confirmed, the result is a compromise for which the authority to compromise is § 7122(a). However, the plan is not an offer-in-compromise because a plan becomes a binding compromise through the plan confirmation process, not through the IRS's having accepted the plan. It would not make sense, given the time limits for objecting to plans, to treat a plan itself as an offer-in-compromise with the delays that would arise from administrative review and administrative appeal under § 7122(d). The issue is an academic one here because the IRS has referred the debtor's plan to the Department of Justice for objection, thus depriving the IRS of any further ability to act under § 7122(a).

Moreover, even if review were available, the court would not view as an abuse of discretion the IRS's decision to treat the debtor's offer-in-compromise as nonprocessable when the debtor is in bankruptcy. When a bankruptcy case is pending, the IRS rationally can determine that it is inappropriate to assay the treatment of the IRS's claims of offer-in-compromise procedures in isolation from the terms of a proposed plan and from the plan confirmation process. This is particularly true when the offer-in-compromise, as here, does not include all of the terms of any proposed plan. Even when a taxpayer's offer-in-compromise includes a proposed plan, the debtor is not in a position to guarantee that it can honor an acceptance of the offer-in-compromise because a proposed plan's effectiveness is contingent on confirmation of the plan by the bankruptcy court. Moreover, if a plan is unsatisfactory, and referred on that basis to the Department of Justice for objection, the IRS loses jurisdiction to accept the offer-in-compromise. It makes sense for the IRS to decide that the treatment of the IRS's claims in bankruptcy must be addressed by the IRS by way of the plan confirmation process instead of the ordinary offer-in-compromise procedure.

The *Chavez* court viewed the Internal Revenue Manual provision regarding returning an offer-in-compromise as inconsistent with 26 C.F.R. § 301.7122–1(b)(3)(iii) which set forth grounds for **rejection** that mirror the Internal Revenue Manual's standard for **returning** (and treating as no longer processible) an offer-in-compromise based on a taxpayer's continuing failure to comply with ongoing obligations to file tax returns and make timely deposits of employment taxes. Treating an offer-in-compromise as nonprocessible

when the taxpayer is in bankruptcy does not conflict with any part of 26 C.F.R. § 301.7122–1.

*Chavez* also pointed to the fact that the Internal Revenue Manual does not have the force of law, as is true of Revenue Procedures as well, but not true of 26 C.F.R. § 301.7122–1. That observation was necessary to support the determination in *Chavez* that an Internal Revenue Manual provision may not override a Treasury Regulation, but it does not alter the analysis here. It was entirely appropriate for the Secretary to leave the issue of nonprocessibility to a Revenue Procedure instead of a Treasury Regulation. Section 7122 charges the Secretary to prescribe "guidelines," not "regulations," in contrast to other provisions of the Internal Revenue Code (such as 26 U.S.C. §§ 1(g)(7)(C); 1(g)(7)(h)(9); 21(f); 23(i); and 4462(i)(4)) which require the Secretary to prescribe regulations.[10] The Revenue Procedure provision at issue, requiring offers-in-compromise to be treated as nonprocessable when the taxpayer is in bankruptcy, was thus duly promulgated, and does not conflict with either 26 U.S.C. § 7122 or 26 C.F.R. § 301.7122–1.

In conclusion, the court cannot find that treating offers-in-compromise as nonprocessable in bankruptcy violates a clear nondiscretionary duty on the part of the IRS. Accordingly, mandamus is unavailable to compel the IRS to process the debtor's offer-in-compromise.

### C.

 Mandamus is also unavailable on an alternative ground. As held in *DRG Funding Corp. v. Secretary of HUD*, 76 F.3d 1212, 1216 (D.C.Cir.1996), "[m]andamus is an extraordinary remedy, available

---

**10.** Section 4462(i)(4) is particularly instructive because it requires the Secretary to prescribe **regulations**, not **guidelines**, governing settlements of certain excise tax claims.

only if other relief is inadequate." [Citation omitted.] The debtor has proposed a plan of reorganization. The IRS, to protect its interests, evaluated the plan and decided to request the Department of Justice to object to the plan. Through that process, the debtor has already received a decision regarding the acceptability to the IRS of the treatment the debtor proposes. Because the debtor has already achieved a decision regarding the acceptability of the treatment his plan proposes for the IRS's claims, he has achieved his end in filing an offer-in-compromise, and mandamus is inappropriate. *Power v. Barnhart,* 292 F.3d at 787. That the end was achieved by the processing of the debtor's proposed plan, instead of by processing of an offer-in-compromise (by an office with less experience with bankruptcies), is of no consequence. As discussed in *Power v. Barnhart,* 292 F.3d at 787–88, the court in *Northern States Power Co. v. U.S. Dep't of Energy,* 128 F.3d 754 (D.C.Cir.1997), declined to grant mandamus because contractual remedies under a standard contract between the parties afforded the plaintiff "another potentially adequate remedy" if the agency failed timely to perform an unconditional statutory duty. *Northern States,* 128 F.3d at 759. It follows that a decision on the acceptability of the debtor's plan achieved by processing of its proposed plan was an adequate remedy to achieve the end the debtor desired, even though not employing the means the debtor desired. *See Power v. Barnhart,* 292 F.3d at 787 ("were we to define the means to the end as the end itself, we would simply write the third prong out of the mandamus test.").

The debtor is still free to discuss compromise on modified terms with the Department of Justice, or to attempt to obtain confirmation of a plan in accordance with the requirements of the Bankruptcy Code. If the debtor's plan does not pass muster under those requirements, the government's refusal to accept that treatment has not deprived the debtor of any relief to which it is entitled. If confirmation is denied, leading to a dismissal, the debtor may take steps, as in *Chavez,* to obtain administrative review under 26 U.S.C. § 6330(d)(1) of any IRS decision to proceed with levy instead of compromising.

### D.

In the midst of the pendency of this adversary proceeding, the debtor has proposed a plan to which the IRS, through the Department of Justice, has objected. Upon objecting to the debtor's plan on behalf of the IRS, the Department of Justice is vested with the authority to compromise under § 7122, and it obviously can insist on negotiating the terms of a plan in a fashion different than the use of Form 656, as 26 C.F.R. § 301.7122–1 does not apply to the Department of Justice. *See In re Matter of Grand Jury Applicants (C. Schmidt & Sons, Inc.),* 619 F.2d 1022, 1028 (3d Cir.1980); *Hartzog v. United States,* 6 Cl.Ct. 835 (1984); *Blackmon & Assocs., Inc. v. United States,* 409 F.Supp. 1264, 1265 (N.D.Tex.1976). Because the IRS no longer has authority to approve a compromise of the debtor's tax liabilities, an order to compel it to process the Form 656 would be a pointless exercise. For this additional reason, mandamus is inappropriate at this stage.

### E.

Similarly, 11 U.S.C. § 1129(a)(9)(C) imposes no nondiscretionary duty on the IRS to process offers-in-compromise. Section 1129(a)(9)(C) specifies a treatment a plan must accord certain tax claims of the IRS unless the IRS agrees to a different treatment. Obviously the IRS has complete discretion to decide whether to agree to such different treatment or whether even

to consider agreeing to such different treatment. In any event, the plan process is an adequate alternative remedy available to the debtor to obtain the IRS's position in the case.

### F.

In conclusion, mandamus is inappropriate here. When a taxpayer becomes a debtor in a chapter 11 bankruptcy case, the Secretary has concluded, pursuant to an exercise of discretion embodied in the applicable Revenue Procedure, that the best interests of the government warrant addressing the treatment of the government's tax claims in the context only of considering a proposed plan, and to return any Form 656 offers-in-compromise as nonprocessable. This discretionary decision under 26 U.S.C. § 7122 and 11 U.S.C. § 1129(a)(9)(C) is not to be countermanded by the employment of the mandamus remedy which is limited to compelling the performance of strictly ministerial duties, and which is unavailable when, as here, an alternative adequate remedy (the plan confirmation process) is available to learn the IRS's position.

### IV

The debtor properly observes that in invoking § 105(a), it is not confined to seeking mandamus relief. It urges that the requested order is necessary to the plan confirmation process because it will allow the debtor to obtain a tax repayment agreement that will permit it to formulate a chapter 11 plan. Accordingly, the debtor urges that the requested relief is justified under § 105(a), not as mandamus relief, but as necessary to facilitate reorganization.

In *Macher,* 303 B.R. at 802, the district court concluded that the fact that § 1129(a)(9)(C) contemplates that the IRS may agree to less than full payment of claims, combined with "the Bankruptcy Code's 'fresh start' principle, and the common sense realities of bankruptcy reorganizations," require that the IRS not refuse to consider an offer-in-compromise. *Accord, Holmes,* 309 B.R. at 828; *In re Peterson,* 317 B.R. 532, 534 (Bankr.D.Neb. 2004) (following *Holmes*). This court respectfully declines to follow those decisions, and rejects the debtor's argument. Specifically, none of the three grounds invoked by *Macher* justify its conclusion that § 105 relief of the character sought here is appropriate.

### A.

First, "the common sense realities of bankruptcy reorganizations" referred to by *Macher* warrant allowing the IRS to treat Form 656 offers-in-compromise as nonprocessable once a chapter 11 bankruptcy case intervenes. *Macher* and its progeny fail fully to consider the dynamic which arises from a bankruptcy case and which warrants the IRS being allowed to address treatment of its claims other than through the Form 656 offer-in-compromise process that is divorced from the realities of that dynamic. The Chief Counsel Notice makes clear the IRS's willingness, principally in the context of addressing a proposed plan, to consider agreeing to payment of less than the full amount of its tax claims. That Notice lays out sound policy grounds for the IRS's decision (and for bankruptcy courts' not countermanding that decision) to address treatment of its tax claims in a chapter 11 case principally in the context of a proposed plan instead of Form 656 offers-in-compromise.

As recognized by 11 U.S.C. § 1112(a)(4) and (5), the ultimate goal of such a case generally ought to be to achieve a confirmed plan, and chapter 11 plans present an entirely different dynamic than exists outside of a bankruptcy case. Addressing

a proposed compromise of tax claims in a ·chapter 11 case in a context other than the new playing field that arises from the commencement of that case would be to consider the IRS's interests in a vacuum. Principally, the IRS will prudently wish to consider compromise in the context of a proposed plan.[11] Among factors a creditor may consider in electing to agree to a proposed plan are the specific treatment of its claim, and the treatment of other creditors' claims (such as whether such claims are being paid more generously or more quickly), as well as the feasibility of the plan, and default provisions. Those issues cannot be assessed without a proposed plan. The chapter 11 process enables creditors to assess a proposed plan,[12] and affords procedures for a creditor's participation in the plan confirmation process.[13] To require the IRS to process a Form 656 offer-in-compromise, particularly one which utterly fails to set forth terms of a proposed chapter 11 plan, is neither "necessary or appropriate to carry out the provisions of [the Bankruptcy Code]" as required to grant § 105(a) relief.

▮▮▮ Moreover, § 105(a) does not confer on a bankruptcy court a license to impose on a creditor restrictions regarding how that creditor shall address its rights in a bankruptcy case according to the bankruptcy court's views of the "common sense realities of bankruptcy reorganization":

> [S]ection 105(a) does not provide bankruptcy courts with a roving writ, much less a free hand. The authority bestowed thereunder may be invoked only if, and to the extent that, the equitable remedy dispensed by the court is necessary to preserve an identifiable right conferred elsewhere in the Bankruptcy Code. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) (explaining that a bankruptcy court's equitable powers "can only be exercised within the confines of the Bankruptcy Code"); *Noonan v. Sec'y of HHS (In re Ludlow Hosp. Soc'y, Inc.)*, 124 F.3d 22, 27 (1st Cir.1997) (similar).

*Jamo v. Katahdin Fed. Credit Union (In re Jamo)*, 283 F.3d 392, 403 (1st Cir.2002) (bankruptcy court lacked power to modify a reaffirmation agreement or compel the parties to enter into a judicially-crafted reaffirmation agreement). *Cf. Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 332, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999) ("the equitable powers conferred by the Judiciary Act of 1789 did not include the power to create remedies previously unknown to eq-

---

**11.** The IRS also negotiates treatment of its claims in the context of other specialized aspects of bankruptcy such as a debtor's requests under 11 U.S.C. § 363 to use cash collateral or to sell IRS collateral free and clear of liens.

**12.** The bankruptcy courts require debtors-in-possession to file operating reports in a chapter 11 case in part to allow interested parties to assay the feasibility of a proposed plan. To obtain confirmation of a plan, the debtor generally must file a disclosure statement under 11 U.S.C. § 1125 which provides information which permits creditors to make informed judgments regarding voting on the plan.

**13.** Under 11 U.S.C. § 1129(a)(9)(C), the IRS can choose to agree or not agree to the treatment of its allowed claims entitled to priority under 11 U.S.C. § 507(a)(8). Under 11 U.S.C. § 1126, the IRS can vote to accept the plan or to reject the plan with respect to its non-priority tax claims (that is, any claims in a class of allowed secured claims or a class of allowed unsecured claims not entitled to priority). The IRS can also elect, as occurred here, to request the Department of Justice to object under F.R. Bankr.P. 3020(b) to the debtor's plan.

uity jurisprudence.").[14] The "common sense realities of bankruptcy reorganization" are not an identifiable right in the Bankruptcy Code. Although a debtor has a right to attempt to obtain a confirmed chapter 11 plan, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure set forth the tools that the debtor may employ in that endeavor and correspondingly the rights of creditors in deciding whether to agree to or contest such a plan. To restrict a creditor in how it addresses the treatment of its claims which will be the subject of a plan, would not be "to carry out the provisions of [the Bankruptcy Code]" but the exact opposite by depriving that creditor of opportunities afforded it by the Bankruptcy Code. As the Supreme Court has recognized:

> Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate.

*Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985). To confine the Secretary to the ordinary offer-in-compromise program would not carry out provisions of the Bankruptcy Code but would instead confer on the debtor a new procedural weapon not found in the Bankruptcy Code.

### B.

Second, the "fresh start" principle is no basis for commanding the IRS to process a Form 656 offer-in-compromise in a vacuum divorced from consideration of a proposed plan. The so-called "fresh start" is not a specific statutory provision. Instead, certain provisions are viewed as giving the debtor certain "fresh start" relief, as in the case of the Bankruptcy Code's anti-discrimination provision already discussed (§ 525(a)) and the Bankruptcy Code's discharge and exemption provisions (*see* 11 U.S.C. §§ 522, 524, and 1141(d)(1)). Those provisions, however, are limited in scope and are not a license to employ § 105(a) to create additional "fresh start" relief out of whole cloth without statutory authorization. Again, as *Jamo*, 283 F.3d at 403, demonstrates in addressing the "fresh start" topic of reaffirmation agreements, § 105(a) is not a roving commission to do equity as the court sees fit, but instead must be tied to carrying out specific provisions of the Code.

As already demonstrated, § 525(a) (one of the statutory forms of "fresh start" relief) is unavailable to entitle the debtor to "fresh start" relief in the form of barring the IRS from treating Form 656 offers-in-compromise as nonprocessable once bankruptcy intervenes. It would be entirely inappropriate to seize on the "fresh start" principles that underlie § 525(a) and to expand the reach of those principles beyond the carefully limited relief afforded by § 525(a).

### C.

From the foregoing, it is readily evident that the IRS's discretionary authority under § 1129(a)(9)(C) to agree to less than full payment of its claims is not an identifiable Bankruptcy Code right of a debtor which warrants § 105(a) relief of the character sought here. The right rests in the IRS, not the debtor, and the relief sought here is neither necessary or appropriate to carry out that statutory right, and would

---

**14.** In *Grupo Mexicano,* the Court held that the equity jurisdiction conferred on federal courts does not empower a court to freeze assets for the benefit of a creditor.

impose on the IRS a nonexistent duty unenforceable by way of mandamus. The IRS should be allowed to exercise its discretion under § 1129(a)(9)(C), without interference by the court in how the IRS decides to approach that right. *Cf. Norwest Bank*, 485 U.S. at 207, 108 S.Ct. 963 (decision of class of unsecured creditors to accept or reject plan "is for the creditors to make in the manner specified by the Code. 11 U.S.C. § 1126(c).")

The debtor can point to no identifiable right conferred by the Bankruptcy Code whose preservation warrants requiring the IRS to process an offer-in-compromise in a vacuum divorced from an actual proposed plan. A debtor has no right to have the IRS agree to a treatment of its claims less favorable than what is required by the Bankruptcy Code, and no right to compel the IRS to consider agreeing to such treatment in a vacuum devoid of an actual proposed plan. The Bankruptcy Code and Federal Rules of Bankruptcy Procedure themselves set forth the procedures by which a debtor may attempt to obtain a confirmed plan, and the IRS has not acted contrary to those provisions. Indeed, it has made clear that it is in the context of those procedures that it will address the treatment to which its claims will be subjected.

A court may (or may not) have the inherent authority to order parties to attempt to negotiate acceptable terms of a plan, but I need not decide that issue.[15] Assuming that such a power exists, it does not extend to directing a creditor to consider a compromise of how much of its claims are to be paid under a nonbankruptcy offer-in-compromise program in isolation from the plan confirmation process. The Chief Counsel Notice prescribes consideration by IRS insolvency employees of a debtor's proposed plan, submitted in accordance with bankruptcy procedures, to determine whether it is in the IRS's best interests. A court ought not impose on the IRS instead the ill-fitted offer-in-compromise procedures the IRS utilizes outside of bankruptcy.

### D.

The IRS ought not be treated differently than any other creditor in enjoying freedom to choose how it will deal with debtors in bankruptcy. Consider the following example. A private mortgagee has a unit which administers a mortgage default workout program outside of bankruptcy, but bars that unit from processing workout proposals once bankruptcy intervenes, and requires that consideration of treatment of its mortgage once bankruptcy intervenes will be addressed by a special bankruptcy unit and in the context of its rights under the Bankruptcy Code, not solely under the criteria that exist outside of a bankruptcy case. Section 105(a) would be no basis for commanding the mortgagee to have its workout unit process a workout proposal under the criteria that exist outside bankruptcy, and it ought similarly not be employed against the IRS in the fashion the debtor seeks here.

This is reinforced by the character of the United States' form of government. A bankruptcy court, as a part of the judicial branch of government, and in the absence of clear legislative authority to do so, ought to be loathe to interfere with the conduct in a bankruptcy case of a unit of the executive branch of government in protecting its interest in bankruptcy, particu-

---

15. The strongest case for arguing that such a power exists is when the parties have appeared through counsel in the case and the order is directed to the attorneys as officers of the court.

larly when that unit is charged with collecting the public fisc.

The courts that have employed § 105(a) against the IRS to command it to process Form 656 offers-in-compromise may have done so on a gut reaction that it is unfair discriminatory treatment for the IRS, as a governmental unit, to deprive a debtor of an opportunity the debtor would have outside of bankruptcy. However, unfair discriminatory treatment of a debtor is the topic that § 525(a) addresses, and as already demonstrated, § 525(a) does not bar the differing treatment the IRS accords debtors in and outside bankruptcy. Just as a private creditor ought not be straight-jacketed by a grant of relief of the kind that the debtor seeks here, the IRS ought not be either.

### V

For the foregoing reasons, the court will enter a judgment dismissing this adversary proceeding on the merits.

[Signed above.]